4 U.S. 279
 4 Dall. 279
 1 L.Ed. 833
 Sharpless
v.
Welsh et al.
 Supreme Court of Pennsylvania.
 September Term, 1803
 
 1
 SCIRE FACIAS against John Welsh, Redman Byrne, and the Bank of the United States, garnishees in a foreign attachment, issued by the plaintiff against M. Moore, of Charleston. The facts were these: Moore, being indebted to several persons inPhiladelphia, remitted to Redman Byrne, a bill of exchange, dated the 13th of November 1800, drawn by Joseph Byrne, in favour of Redman Byrne, on John Welsh, at 60 days sight, for 1700 dollars; saying, in the letter that inclosed the bill, 'I will send the duplicate, in a few days, with directions what to do with it.' Accordingly, on the 22d of November, he wrote again to Byrne, ordering the following disposition of the bill:
 
 
 2
 'To Martin Bernard 70l.
 
 
 3
 'To Moore, surviving partner of Goldthwaite 29 Dollars.
 
 
 4
 'To Jesse Sharples 400 Dollars.
 
 
 5
 'To M. Shields 300 Dollars.
 
 
 6
 'To Robert Campbell 400
 
 
 7
 'The balance to be divided equally between Mr. Carr and M'Goffin.'
 
 
 8
 Soon after the receipt of his letter, Byrne showed it to the plaintiff, and, also, to John Shields; told each of them of the appropriations; and promised to pay each the sum specified, when the cash should be received. And, on the 26th of December 1800, he wrote to Moore, that the bill 'should be disposed of, as his last letter directed.' Subsequent to these communications, the plaintiff issued a foreign attachment, on which the present scire facias is grounded. Byrne informed Moore, of the occurrence, and called for instructions, on the 8th of January 1801; and on the 6th of February following, Moore answered, 'I would rather, if by any means you could have it done, that Sharpless should be got to put up with 8 or 900 dollars; and the rest to be paid to the other people mentioned, as far as it will go.' But Byrne, conceiving himself bound to pay, according to the first appropriation, did not mention this proposition to Sharpless. In the meantime, the bill of exchange, which had been accepted on the 28th of November, was regularly protested for non-payment; Welsh assigning the attachment, as the cause of his refusal to pay.
 
 
 9
 On the trial of the cause, it was contended, for the plaintiff, that the property in the bill continued to be Moore's, at the time of the attachment; and that the creditors had acquired no lien upon it. 4 Burr. 2174. The letter of appropriation, is nothing more than a private order, to pay the money, when it was received; and Moore had a power to revoke, or alter it (as, in fact, he did, in his letter of the 6th of February) at any time before actual payment to the creditors.
 
 
 10
 But it was insisted, by the counsel for the defendants, that the letter of the 22d of November, amounted to an irrevocable appropriation and transfer of the fund; that Byrne became a trustee, for the creditors named in the letter; and that the trust fund was not liable to a foreign attachment. Ambl. 297. 1 Atk. 124. 2 Atk. 207. 1 F. Vez. 280. 1 Vez. 331, 2. 1 East. 550. 5 T. Rep. 215. 494.
 
 By the COURT:[1]
 
 11
 The plaintiff had a legal right to institute the attachment, which cannot be divested, by any irregular attempts to obtain a preference, from the trustee himself. The only question is, whether the fund attached, can be regarded, under the circumstances of this case, as the property of Moore?
 
 
 12
 The facts are few, but powerful. Moore remits the bill to Byrne, with express directions to apply the money, to the payment of specific creditors in Philadelphia; and Byrne undertakes to do so. Independent of the communication to the plaintiff, Byrne mentioned the general appropriation to Shields, with a direct and positive promise, to pay Shields his proportion of the money.
 
 
 13
 Under these circumstances, it is clear, that there could be no revocation of the appropriation, in favour of Shields; to whom Byrne himself had become responsible: but the doubt arises, as to the situation of those creditors, who had received no intimation of the remittance. If, indeed, no notice had been given to any of the creditors, we do not think that any of the creditors would have acquired a vested interest in the fund, by the terms of the correspondence between Moore and Byrne. But it is a material fact, for the consideration of the jury, that the plaintiff received information, not only of his own apportionment, but of the distributive shares of all the creditors; and that he never objected to this appropriation of the fund, until he issued his attachment. If the jury shall think, from this fact, that the plaintiff ratified, or acquiesced, in the distributive appropriation; the law will not permit him, afterwards to monopolize the fund, in the way, that the present suit contemplates.
 
 
 14
 BRACKENRIDGE, Justice.
 
 
 15
 The equity of the case is strongly in favour of the defendants; but I find it difficult to surmount the strict rules of law, as to those creditors, who, receiving no notice, acquired no right. The creditors who received notice, and assented to the appropriation, had clearly a vested interest. But, I incline to think, the law in favour of the creditors stops there; unless the fact is sufficiently ascertained, to satisfy the jury, that the plaintiff, by his conduct, approved and assented to the whole appropriation, after he was fully apprised of it. That fact, the important one in the cause, if found affirmatively, by the jury, must be decisive in favour of the defendants.
 
 
 16
 On the day, succeeding that, upon which the charge was delivered, the jury returned to the bar, and declared, that they could not agree upon a verdict; proposing, at the same time, several legal questions, for the solution of the Court.
 
 
 17
 BUT SMITH, Justice, observed, that it would, probably, extricate the jury from their embarassment, as well as relieve his own mind, to inform them, that since the adjournment, he had entirely changed his opinion, upon the principal legal point in the cause.
 
 
 18
 He said, that he had always thought it more honourable to retract an erroneous opinion, when the error was discovered, than to persist in it, upon the suggestions of a false and pernicious pride. He then declared, that on full reflection and research, during the recess, he had been convinced, that from the time of receiving Moore's letter, ordering specific payments, to the enumerated creditors, Byrne became a trustee for those creditors; and that the creditors thereupon acquired such an interest in the trust fund, as could not be divested, or affected by the plaintiff's attachment.[2]
 
 
 19
 The jury, having again retired, soon agreed upon a verdict, in favour of the plaintiff, for 400 dollars; being the sum to which he was entitled by the original appropriation of the bill of exchange.
 
 
 
 [1]
 The cause was tried at Nisi Prius, Philadelphia, on the 16t h of June 1803, before SMITH and BRACKENRIDGE, Justices.
 
 
 [2]
 BRACKENRIDGE. Justice, expressed no opinion upon this occasion; but seemed, silently, to assent to the statement now made by Judge SMITH.