## J. A. BURGER v. H. BURGER ET. AL.

APPEAL BY J. W. B. BAUSMAN FROM THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 19, 1890—Decided June 2, 1890.
[To be reported.]

1. When money is deposited in a bank to the credit of " A, attorney for B," neither the bank nor A can be heard to deny that the money belongs to B; but if, in point of fact, the money belongs to a third person, the latter, on giving notice of his claim to A and the bank, can recover it if he succeed in establishing his right.

(*a*) A debtor agreed by parol with certain of his creditors, in consideration of their giving him time to consider whether he would accept a proposed composition or make a general assignment, to deposit a sum of money with his attorney, to be paid to his creditors if a compromise should be made, or to his assignee, if he should make an assignment:

2. The money not having been specifically and irrevocably appropriated, by this arrangement, to any particular creditor or creditors, it remained in the hands of the attorney the property of the debtor, and was liable to attachment as such, although the creditors joining in the arrangement had complied with their agreement to give the debtor time.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MC-COLLUM JJ.

No. 352 January Term 1889, Sup. Ct.; court below, No. 5 March Term 1888, C. P.

On February 14, 1888, a judgment was entered by confession in favor of John Adam Burger against Henry Burger for $4,500, and the same day an attachment-execution was issued thereon, and was served upon J. W. B. Bausman as garnishee.

On March 27, 1888, in response to interrogatories filed by the plaintiff, the garnishee answered, stating the facts as follows:

" At a meeting of the creditors of Henry Burger, at which he

was present, held at my office December 1, 1887, the creditors agreed with him that they would accept 33⅓ cents on the dollar, in full settlement of their claims, and would give him until January 1, 1888, to answer if he would accept or reject this offer of compromise, and if he rejected this offer he was to make an assignment for the benefit of his creditors at the latter date or soon thereafter; and, as an act of good faith in the premises, the creditors required of Henry Burger that he deposit with me at once certain moneys then in his possession which he had realized on certain of his fire insurance policies; whereupon said Henry Burger did on December 1, 1887, place in my hands the sum of $1,737.50, which sum I deposited on that same day at the Farmers National Bank of Lancaster to the credit of J. W. B. Bausman, attorney for Henry Burger, opening a special account with the bank for this money; and it was also agreed that said money was to be applied to the payment of the 33⅓ per cent, if the compromise was accepted, and if not accepted, he was to make an assignment for the benefit of creditors, and the said money was to be paid to his assignee."

On motion of the plaintiff, the court thereupon granted a rule to show cause why judgment for $1,737.50 should not be entered against the garnishee upon his answer.

On December 17, 1888, at the argument of the rule, the garnishee, under objection, filed the following additional answer:

"At the meeting of the creditors of Henry Burger, held December 1, 1887, the creditors present agreed to bring no suits against him until January 1, 1888, and made it a part of this agreement and as a condition thereof, that he should deposit the sum of $1,737.50, to be used and applied as set forth in the answer hereinbefore filed; and the creditors did bring no suits until after January 1, 1888. John Adam Burger, the attaching creditor, who is also assignee for benefit of creditors of defendant, was not present at said meeting."

After argument, the court, LIVINGSTON, P. J., on January 19, 1889, filed an opinion, which, after reciting the facts, proceeded as follows:

In Sharpless v. Welsh, 4 Dall. *279, where a bill of exchange was remitted to A, at 60 days' sight, for $1,700, and specific

orders were given to pay to certain creditors of the drawer, certain specified sums, A, on receipt of it, showed it to the creditors, told each of the appropriation, and promised to pay each the sum specified, when the cash should be received, and wrote to the party remitting that the money should be disposed of as he had directed, and this was also known to Sharpless, who had seen the bill of exchange. The court held, that from the time of receiving Moore's letter, ordering specific sums to be paid to certain enumerated creditors, the party receiving the bill became a trustee for those creditors, and that, thereupon, those creditors acquired such an interest in the fund as could not be divested or affected by plaintiff's (Sharpless) attachment. In Nesmith v. Drum, 8 W. & S. 9; that, a draft upon a particular fund in the hands of an attorney, for collection, is an equitable assignment of it, such as would prevent it from being subject to attachment for the debt of the drawer. In Guthrie's App., 92 Pa. 269, there were no attaching creditors; but, the court say, following the authority of Nesmith v. Drum, " had there been a copy of the resolution served on the appellants, the defendants below, at the time of the assignment of the bills against Porter, Moreland & Co. and others, or even had they had notice of that resolution, we would have been compelled to hold them as trustees for the employees of the company. But . . . . . the mere avowal of an intention to apply a fund or have it applied in a particular way, has never yet been held to be an application of it."

In these cases, there were specific and direct appropriations of the specific sums, to pay specific claims to certain persons enumerated, or written transfers, equitable assignments, in the nature of declarations of trust. But, in the case before us, there was no specific and direct appropriation of a specified amount, or sum, to pay specific claims or amounts to certain enumerated persons; no written transfer, or equitable assignment in the nature of a declaration of trust.

According to the answer of the garnishee, some of the creditors of Henry Burger met Henry Burger at the office of the garnishee, on December 1, 1887. At that meeting, the creditors present made two propositions to Mr. Burger. 1. They proposed that they would accept 33⅓ per cent of their claims, as in full payment of the claims they held against him, and that

they would give him until January 1, 1888 to accept or reject this proposition; they also agreed that they would bring no suits against him until January 1, 1888.  2. If he rejected that proposition, or offer, they next proposed that he should make an assignment for the benefit of his creditors, at the latter date, January 1, 1888, or soon thereafter.  And, as an act of good faith on his part in the premises, those creditors present required that Henry Burger should deposit at once with Mr. Bausman, the garnishee, certain money, then in Mr. Burger's possession, realized on certain fire insurance policies.  If the first proposition was accepted, said money was to be applied to the payment of the 33⅓ per cent of their claims ; if not, then on the assignment being made, it was to be paid to the assignee for the benefit of creditors.  Mr. Burger did at once deposit with Mr. Bausman the sum of $1,737.50, which Mr. Bausman deposited in bank to the credit of " J. W. B. Bausman, attorney for Henry Burger," and he still holds it subject to " his order, as attorney for Henry Burger."  In his answer, the garnishee also states that John A. Burger, the plaintiff, was not present when the above propositions were made on December 1, 1887, at his office, and we have nothing before us to show that he ever had any knowledge of such proposals.

No suits were brought prior to January 1, 1888.  Henry Burger does not appear to have accepted the first proposition, nor did he make an assignment until February 16, 1888, after this attachment was issued and served.  John A. Burger, as shown by the record, was a heavy creditor of Henry Burger, and on February 14, 1888, obtained a judgment against him for $9,000, conditioned to pay $4,500 forthwith.  Upon this judgment he issued this attachment, which was served prior to the execution of the deed of assignment by Henry Burger.

In Beans v. Bullitt, 57 Pa. 221, it is said that an avowed purpose of a borrower of money to apply it in a certain way, is not an application of it ; that an agent, directed to pay money generally, without specification of amount or of the person of the payee as distinguished from others, has never been held to be a trustee for any other than the principal : Story's Eq., § 1042. In Watson v. Bagaley, 12 Pa. 164, GIBSON, J., it was held that a power of attorney to collect certain moneys and pay them to certain creditors, in a prescribed order of preference, is virtually

an assignment; and, though such power was revocable, it was no longer so after the collection of the moneys and holding them ready for distribution, according to the terms of the trust.    Such assignment is within the purview of the acts regulating transfers for the benefit of creditors; and the provision of one of those acts, requiring such assignments to be recorded, not having been complied with, the moneys collected were held liable to attachment by a creditor of the assignor.    In Blabon v. Lewis, 3 Phila. 454, it is said that where a deposit of money is made by a debtor in the hands of a third person, for the purpose of equal distribution among his creditors, he is the agent of the debtor, and is not responsible to the creditors unless the transaction takes effect as a trust for creditors, when it will be invalid unless recorded.

But it is not necessary to pursue our inquiry further.    A plea of nulla bona would not avail the garnishee under the facts, if presented as stated in his answer.    There is no appropriation, no equitable assignment in this case, such as would estop an attaching creditor of Henry Burger, the depositor.    The money was, as stated in the answer, handed over by Mr. Burger to Mr. Bausman, and Mr. Bausman deposited it in bank, in the name of J. W. B. Bausman, not as trustee for certain creditors, but as attorney for Henry Burger; and, as attorney for Henry Burger, the defendant in the attachment, he so held and controlled it at the time of the service of the attachment and at the time of filing his answers, and he so holds it to-day; and, being thus held, it is subject to attachment for the debt of Henry Burger, the defendant, in the hands of the garnishee.

Judgment must, therefore, be entered in favor of the plaintiff against J. W. B. Bausman, garnishee, for $1,737.50, and judgment is now ordered to be so entered of record.

—Thereupon the garnishee took this appeal, specifying that the court erred:

1. In entering judgment in favor of the plaintiff and against the garnishee for $1,737.50.

*Mr. Walter M. Franklin* and *Mr. George Nauman* (with them *Mr. J. L. Steinmetz*), for the appellant:

1. The question in the case is whether a debtor who places a specified sum of money in the hands of a third person, to be

held for.the specific benefit of his creditors, in consideration of
their not bringing suits against him, is at liberty to disregard
the arrangement, and give the money, as his property, to a
particular creditor, by means of a confession of judgment and
an attachment thereon. The arrangement made on Decem-
ber 1, 1887, between Burger and his creditors, was perfectly
proper and honest, and it would encourage dishonesty to de-
clare it invalid. The attaching creditor stands in no better
position than Henry Burger. The latter could not recover
the money from Mr. Bausman, as it was placed in the latter's
hands as the result of a contract, made for a valuable consider-
ation. The method of deposit in bank could destroy nobody's
rights.

2. Unless this is held to be a general assignment for the
benefit of creditors, Mr. Bausman must keep the fund, to be
used as agreed upon. An assignment of one particular fund
has never been held to be a general assignment, and it is diffi-
cult to see how a parol contract can be recorded. Even in the
cases cited by the court below, assignments of funds for the .
specific use of creditors have been held good, except in one
case, which has since been doubted: Sharpless v. Welsh, 4
Dall. *279; Nesmith v. Drum, 8 W. & S. 9; Guthrie's App.,
92 Pa. 269; Watson v. Bagaley, 12 Pa. 164; Beans v. Bullitt,
57 Pa. 231. The payment of the $1,737.50, by Burger, was
not his voluntary act, but was in consequence of a demand by
his creditors; and they, and not he, selected the agent to whom
it was paid. Mr. Bausman was not Burger's agent or deposi-
tary; and the manner of deposit in bank was no part of the
agreement with the creditors.

*Mr. D. McMullen,* for the appellee:
1. The question for determination is whether, by placing a
sum of money in the hands of a third person, pending negotia-
.tions with creditors, who agree not to bring suit for a certain
time, a debtor can put the fund beyond the reach of a bona fide
creditor who was not a party to the arrangement. There was
in this case no specific and direct appropriation of specified
amounts to the payment of specific claims of certain enumer-
ated persons, nor was there any written transfer or equitable
assignment or declaration of trust. It is not even claimed that

Opinion of the Court.

the money was deposited for the sole benefit of the creditors who were parties to the arrangement.

2. If Burger elected not to compromise at 33⅓ per cent, the arrangement would be binding on no one unless assented to by all his creditors; and, in the event of his declining to compromise, and refusing to make an assignment, it vested no power of control over the fund in any one. Therefore, it was still the property of Burger: Beans v. Bullitt, 57 Pa. 231. The utmost effect that could be given to the arrangement, is that the fund be kept intact so as not to be beyond the reach of legal process at the end of the period given Burger for deliberation, and so that no creditor would be the worse for waiting thirty days. This was accomplished. It remained in Bausman's hands for six weeks after January 1, 1888, and if the other creditors, by their laches, permitted the plaintiff to obtain judgment and attach it, they can blame themselves only.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was an attachment-execution in the court below. Judgment was given against Bausman, one of the garnishees, upon his answer to the interrogatories filed by the attaching creditor. From this judgment, Bausman has appealed.

The answer admits the receipt of $1,737.50 from Henry Burger, the defendant in the execution, and that he (Bausman) deposited the money in the Farmers' National Bank of Lancaster to the credit of "J. W. B. Bausman, attorney for Henry Burger." Thus, upon the books of the bank, the money belonged to Henry Burger, and neither the bank nor Burger's attorney could be heard to deny it was his: Cit. N. Bank v. Alexander, 120 Pa. 476; First N. Bank v. Mason, 95 Pa. 113. If, in point of fact, the money was not that of Burger, but belonged to a third party, the true owner could give notice of his claim to Bausman and the bank, and would be entitled to recover it if he succeeded in establishing such claim.

It was alleged, however, that this money belonged to the creditors of Burger, and in his additional answer the garnishee says: "At the meeting of the creditors of Henry Burger held December 1, 1887, the creditors present agreed to bring no suits against him until January 1, 1888, and made it a part of this agreement, and as a condition thereof, that he should

deposit the sum of $1,737.50 to be used and applied as set forth in the answer hereinbefore filed, and the creditors did bring no suits until after January 1, 1888. John Adam Burger, the attaching creditor, . . . . . was not present at said meeting." It was contended that this created a trust for creditors. But what creditors? There was no specific appropriation of the fund to any particular creditor or creditors. No creditor appears or was named to whom the money was to be applied, and it is not pretended that it was to go to all of his creditors.

The whole transaction was in parol; had it been in writing, it would have inured to the benefit of all the creditors, and, if not recorded within thirty days, the money would have been liable to attachment. At best, it was an attempt to make a parol assignment, which would not come within the recording acts, and which would inure to a portion only of the creditors. It might, perhaps, have succeeded, had there been an irrevocable appropriation of the money to particular creditors. Until so appropriated, the money remained the money of Burger, and was liable to the attachment. Mr. Bausman, if an agent or trustee at all, was only so for Mr. Burger. As was said in Beans v. Bullitt, 57 Pa. 221: "We have gone very far in favoring what are called equitable assignments or appropriations, but never so far as to hold that an agent directed to pay money generally, without specification of amount, or of the person of the payee, as distinguished from others, is a trustee for any other than the principal."

Judgment affirmed.

