The Baltimore & Ohio Railroad Co., Appellant, *v.* Kensington Land Company, Defendant, and The Solicitors' Loan and Trust Co., Garnishee.

*Contract—Foreign attachment—Corporation—Equity—Insolvency.*

Certain parties, called for convenience the subscribers, advanced money to a land company on condition that the money should be expended by the company in payment for and improvement of a tract of land already purchased for the company, and that the entire proceeds of sale of lots should be paid over to a certain trust company to repay the subscribers, and in the meantime, to secure the latter, the entire capital stock of the Land Company was to be deposited with the trust company. The contract was carried out, and the proceeds of the sale of parts of the land was paid to the trust company for the subscribers; but before actual distribution to the latter, the money was attached by the plaintiff as the money of the Land Company. Apart from the plaintiff's judgment there was nothing to show that the Land Company was insolvent. It was not shown that the subscribers were the promoters, officers or stockholders of the Land Company. *Held,* (1) that the effect of the payment to the trust company as agent for the subscribers was the same as if the money had been paid to the subscribers themselves; (2) that even if the Land Company were insolvent and the parties had so acted as to make the agreements fraudulent as to creditors, the remedy was by bill in equity, and not by the collateral proceeding of attachment; (3) that the plaintiff had no standing in the attachment proceedings to claim the money.

Argued Jan. 27, 1896. Appeal, No. 30, July T., 1895, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1890, No. 19½, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed.

Foreign attachment. Before BIDDLE, J.

At the trial it appeared that the money attached had been paid to the Solicitors' Loan and Trust Company by the Kensington Land Company under the following agreements:

PHILADELPHIA, February 9, 1890.

We, the undersigned, hereby agree to deposit with The Solicitors' Loan and Trust Company the sum set opposite our names, to be held by the said The Solicitors' Loan and Trust Company, as follows:

The whole of the said amount to be retained by the said company, until an agreement properly executed, shall be entered into between the " Kensington Land Company," of Chattanooga, Tennessee, and " The Solicitors' Loan and Trust Company," as trustee for the subscribers hereto, in and by which the said Kensington Land Company agrees to pay to the said subscribers the entire amount of their subscriptions hereto, with the interest at the rate of six per cent on each subscription, from the date of the deposit of the same to the time of payment; and also deliver to each subscriber thereto four shares of the full paid non-assessable stock of said company for each $100 of his subscription ; and shall further agree that none of the said money so deposited, shall be used by the said company except for the following purposes :

First. The payment of about fifteen hundred acres of land, in Walker county, Georgia, which have been purchased for said company.

Second. For the purpose of improving the said land by the laying out and grading of streets, erecting a hotel, and such other buildings as should be deemed necessary by the directors of said company ; and for the purpose of securing the subscribers hereto, the said Land Company shall deliver to the said The Solicitors' Loan and Trust Company as trustee, the entire capital stock of the said Kensington Land Company, namely, twenty thousand shares at $100 each, and that upon the payment to the subscribers hereto, of the entire amount of their several subscriptions, with interest as aforesaid, and also of four shares of stock for each $100 of their subscriptions as above set forth, the said trustee shall deliver to the said company the balance of said stock.

The said Land Company further agrees that as soon as practicable, they will make sales of land, and that the entire proceeds of all such sales shall be paid into the said The Solicitors' Loan and Trust Company, as 'trustee, until a sufficient sum is thus acquired to repay the subscribers hereto the entire amount of their subscriptions, with interest as aforesaid.

And the said Land Company also agrees that eight thousand shares of the stock of said company when delivered to them under the terms of this agreement, shall be retained in the treasury of said company to be hereafter disposed of under the direction of the board of directors of said company.

It being distinctly understood that the said The Solicitors' Loan and Trust Company shall not pay out any of the money received by them under this agreement, until the execution of the aforesaid agreement between the said Kensington Land Company and the said The Solicitors' Loan and Trust Company, trustee, and the deposit of the entire capital stock of the said Land Company as aforesaid, and that after the execution of the said agreement, the said The Solicitors' Loan and Trust Company shall hold the said funds under the terms and conditions of said trust agreement, but that the said The Solicitors' Loan and Trust Company assumes no responsibility for the application of the money which it will pay to the said Land Company under the terms of the said agreement.

This agreement made this sixteenth April, 1890, between the Kensington Land Company, of Chattanooga, Tennessee, and " The Solicitors' Loan and Trust Company " as trustee for the subscribers hereinafter referred to witnesseth :

That whereas, the said Loan and Trust Company proposes to obtain subscribers for the benefit of the said Land Company, the said Land Company hereby agrees to pay to the said subscribers the entire amount of their subscriptions with interest at the rate of six per cent on each subscription from the date of their deposit of the same to the time of payment and also to deliver to each subscriber four shares of full paid nonassessable stock of said Land Company for each $100 of his subscription; and further agrees that none of said money so deposited shall be used by said Land Company except for the following purposes :

First. The payment for about fifteen hundred acres of land in Walker County, Georgia, which have been purchased for said Land Company.

Second. For the purpose of improving said land by the laying out and grading of streets, erecting a hotel and such other buildings as should be deemed necessary by the directors of said Land Company.

And for the purpose of securing said subscribers said Land Company hereby delivers to the said The Solicitors' Loan and Trust Company as trustee, the entire capital stock of the said Kensington Land Company ; namely, twenty thousand shares of $100 each; under the agreement that upon the repayment to

the said subscribers of the entire amount of their several subscriptions with interest as aforesaid and also for four shares of stock for each $100 of their subscription as above set forth, the said trustee shall deliver to the said Land Company the balance of said stock.

The said Land Company further agrees that as soon as practicable they will make sales of land and that the entire proceeds of all such sales shall be paid unto the said The Solicitors' Loan and Trust Company as trustee until a sufficient sum is thus acquired to repay said subscribers the entire amount of their subscriptions with interest as aforesaid.

Said Land Company also agrees that eight thousand shares of the stock of said company when redelivered to them under the terms of this agreement shall be retained in the treasury of said company to be hereafter disposed of under the directions of the board of directors of said company.

It is distinctly understood that the said The Solicitors' Loan and Trust Company shall hold the said funds under the terms and conditions of this agreement, but that the said The Solicitors' Loan and Trust Company assumes no responsibility for the application of the money which it will pay to the said Land Company under the terms of said agreement.

In witness whereof, The Kensington Land Company has hereto caused its name to be set and its corporate seal affixed by F. R. Pemberton, its president, and Floyd S. Patterson, its secretary, on the day and year first hereinbefore written. Done in duplicate.

Is it understood that nothing in this agreement binds the Solicitors' Loan and Trust Company to procure any subscribers.

The money attached was the proceeds of the sale of lots owned by the Kensington Land Company. Apart from plaintiff's judgment there was nothing to show the insolvency of the Land Company. There was also no evidence to show that the subscribers to the first agreement were the promoters, officers or stockholders of the Kensington Land Company, except the shares of stock to which they were entitled under the agreement as additional compensation for the money advanced.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*W. H. Addicks,* for appellant.—The capital stock of a corporation is a trust fund for the payment of the debts of the corporation, and so far as the public is concerned creditors have a right to rely upon the fact that it represents value: Sawyer v. Hoag, 17 Wallace, 610; Handley v. Stutz, 139 U. S. 417; Union Mut. Life Ins. Co. v. Frear Stone Mfg. Co., 97 Ill. 537.

The courts of Pennsylvania look with disapproval upon all schemes which have for their purpose the inflation of the capital stock or the creation of fictitious values so as to mislead the public as well as bona fide shareholders without notice: Bailey v. Pittsburg & Connellsville Gas Coal Co., 69 Pa. 334.

The general public and the attaching creditor have a higher right to protection and security under such circumstances than the stockholders in a dispute among themselves: Morrow v. Iron & Steel Co., 87 Tenn. 262; New Castle Ry. v. Simpson, 21 Fed. Rep. 533; Hart v. McFarland, 13 Pa. 182.

*H. La Barre Jayne, Arthur Biddle,* of *Biddle & Ward,* and *Richard S. Hunter* with him, for appellee.—There is no evidence that the Kensington Land Company was insolvent: Hollins v. Brierfield etc. Co., 150 U. S. 383.

Stock issued as full paid stock is, prima facie, full paid stock, and its validity cannot be questioned in attachment proceedings: Handley v. Stutz, 136 U. S. 417; Scovill v. Thayer, 105 U. S. 157.

A stockholder's liability upon admittedly assessable stock does not mature until a call or assessment has been made, and until that time he cannot be sued by the company nor garnisheed at the suit of a creditor: Morawetz on Corporations, 143; Lane's App., 105 Pa. 65.

The money and notes are no longer the property of the Kensington Land Company, and, therefore, cannot be attached by its creditors.

OPINION BY MR. JUSTICE MITCHELL, April 13, 1896:

A plain statement of the substantial facts of this case is all that is necessary to indicate the result. Certain parties, called for convenience the subscribers, advanced money to the Ken-

sington Land Company on specified conditions, the principal of which were that the money was to be expended by the company in payment and improvement of a tract of land in Georgia already purchased for it, and the entire proceeds of sale of lots should be paid over to the Solicitors' Loan and Trust Company to repay the subscribers, and in the meantime to secure the latter the entire capital stock of the Land Company was to be deposited with the Solicitors' Company. This is putting the matter in the most favorable light for the appellant, by treating it as a direct contract between the subscribers and the Land Company. In fact it was done by contract of each party separately with the Solicitors' Company, but as the latter was admittedly merely an agent and trustee the legal effect was the same as if the contract had been made directly between the parties actually interested.

The money was paid over by the Solicitors' Company to the Land Company, and so far as appears used by the latter in payment for the land. Sales of parts of the land were then made and the proceeds, according to agreement, paid to the Solicitors' Company for the subscribers, but before actual distribution to the latter the money was attached by the appellant as the money of the Land Company. This was the issue in the court below, and on the undisputed facts the learned judge could not have done otherwise than enter a nonsuit. The money was clearly no longer the money of the Land Company. As between that company and the subscribers at least the agreements were valid, the Land Company was a debtor, and when it paid the money to the Solicitors' Company as trustee or agent for the subscribers the effect was the same as if it had paid directly to the subscribers themselves. This is an effort by a creditor of the Land Company to overturn the whole transaction and get into its own hands a payment made by its debtor to another creditor. It cannot be done in this way. Even if the Land Company is insolvent, and if the parties have so acted as to make the agreements fraudulent and void as to its creditors, the remedy is by bill in equity and not by a collateral issue in the present form.

But it nowhere appears except by inference from the existence of appellant's judgment, that the Land Company is insolvent. It received the hundred thousand dollars advanced by the subscribers, purchased the land and has sold part of it. Pre-

sumably it has as assets in its hands the rest of the land, one fourth of its capital stock delivered to it by the Solicitors' Company, and the right to receive the remaining three fourths of the stock on payment of the balance due the subscribers on their advances.

Nor is it shown in the evidence that the subscribers who furnished the money, are or were the promoters, officers or stockholders of the Land Company, except so far as they may have received a part of the stock at the rate of four shares per hundred dollars as additional compensation for money advanced. The fact may be so but it was not proved in the case, and without such proof even a bill in equity would have nothing to stand on.

. Judgment affirmed.