# Austin-Nichols & Co., Inc., Appellant, *v.* Union Trust Co., Garnishee et al.

*Attachment execution—Respective rights of debtor and creditor
— Garnishee — Contract — Trusts and trustees — Active trust —
Money held in trust to pay taxes—Act of May 21, 1921, P. L. 1045.*

1. The rights of an attaching creditor cannot rise higher than those which defendant had against the garnishee, and the liability of the latter is measured by his responsibility in case the debtor himself had brought an action to recover it.

2. When a creditor makes use of attachment process, he thereby treats the contract by which the garnishee acquired possession of the fund in his hands as valid.

3. If there has been a prior valid assignment of the amount due from the garnishee, judgment cannot be entered against the garnishee; nor can there be where an equitable transfer of title appears, even though no notice of transfer of ownership was given to the holder of the fund.

4. Where funds are held on special deposit or have been deposited to be used for the payment of specific claims there is an appropriation which places them beyond the grasp of one attempting to attach.

5. A mere power to revoke, or the retention of the right to the balance remaining after the payment of the claims provided for, will not affect the status of the parties.

6. Whenever it is necessary for the accomplishment of an object of the creator of a trust that the legal estate shall remain in the trustee, then the trust is a special active one.

7. If there be a valid deposit created for the benefit of a third party, the cestui que trust has a standing to enforce the obligation assumed.

8. Whether a fund is to be treated as held in trust for a special purpose, or considered merely as a deposit, creating the relation of debtor and creditor, depends on the circumstances of each particular case.

9. If the facts disclose the existence of the former relation, the attaching creditor has no enforceable claim, unless there be a balance remaining after the agreed obligation has been performed, and then only as to this surplus.

10. Where a corporation, in creating a mortgage, provides a fund for the protection of the bondholders to be held by the trustee of the mortgage, and paid over to the corporation from time to time

on sworn certificates, and to be used by it for the sole purpose of paying federal taxes already assessed or which the government may find to be due between certain dates, such fund is not attachable in the hands of the trustee by a creditor of the corporation, where taxes in excess of the fund are found to be due.

11. The fact that the corporation was entitled to the interest on the fund pending the payment of the taxes, is immaterial.

12. Such a trust is not a passive one, and therefore executed.

13. Nor was the contract made while the corporation was solvent, within the inhibition of the Fraudulent Conveyance Act of [May 21, 1921, P. L. 1045.

Argued March 16, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SADLER, JJ.

Appeal, No. 53, March T., 1927, by plaintiff, from order of C. P. Allegheny Co., Oct. T., 1926, No. 1565, discharging rule for judgment in part, in case of Austin-Nichols & Co., Inc., v. The Union Trust Co. Affirmed.

Foreign attachment in assumpsit.

Rule for judgment against garnishee on answers for the sum of $28,511.80. Before FORD, J.

The opinion of the Supreme Court states the facts.

Rule absolute as to the sum of $3,790.02, and discharged as to plaintiff's claim in excess of that amount. Plaintiff appealed.

*Error assigned* was order, quoting record.

*Elverton H. Wicks,* with him *Morris, Walker & Boyle,* for appellant.—Although denominated a "trust fund" in the agreement creating it, this $51,000 fund is but a deposit by the coal company for a particular purpose: is in effect for the exclusive benefit of the depositor, and is to be paid back to depositor on its certain demand. It is therefore attachable in liquidation of a judgment against the depositor: Ashhurst's App., 60 Pa. 290; Erb v. Banco di Napoli, 243 N. Y. 45.

By the terms of this agreement the fund thus deposited is for the real benefit and use of the settlor and is, therefore, not beyond the reach of his creditors: Nolan v. Nolan, 218 Pa. 135; Keyser v. Mitchell, 67 Pa. 473; Brooks's Est., 140 Pa. 84; McAllister v. Marshall, 6 Binn. 338; Johnston v. Harvy, 2 P. & W. 82.

Even admitting, for the sake of argument, that this agreement is in the nature of a trust, nevertheless, since it imposes no active duty on the trust company it resolves itself into a dry, passive or simple trust agreement which becomes executed by the statute of uses into the coal company and is, therefore, subject to this attachment: Vaux v. Parke, 7 W. & S. 19; Arnold v. Harper, 4 Sadler 126; Yarnall's App., 70 Pa. 335; Ogden's App., 70 Pa. 501; Enderiss v. Harkness, 3 W. N. C. 366; Harkinson v. Bacon, 3 W. N. C. 403; Kay v. Scates, 37 Pa. 31.

*William F. Knox,* of *Moorhead & Knox,* with him *Reed, Smith, Shaw & McClay,* for appellee.—An attaching creditor stands in the shoes of the defendant in the attachment and cannot acquire any greater rights against the garnishee than was possessed by said defendant: Reed v. Penrose, 36 Pa. 214; Fessler v. Ellis, 40 Pa. 248; Lane's App., 105 Pa. 49; Jarecki Mfg. Co. v. Hart Bros., 5 Pa. Superior Ct. 422; Willis v. Curtze, 203 Pa. 111; Reichner v. Reichner, 237 Pa. 540; Benedict & Eberle v. Hollman, 68 Pa. Superior Ct. 155.

The fund, so long as any of the taxes remained unpaid, was not subject to the attachment, because the Sullivan Pocahontas Coal Company had no beneficial interest therein, as any money that might be received by it would be held in a trust capacity: Ashhurst v. Given, 5 W. & S. 323; Holdship v. Patterson, 7 Watts 547; Brown v. Williamson's Exrs., 36 Pa. 338; DeRoy v. Richards, 8 Pa. Superior Ct. 119; B. & O. R. R. v. Land Co., 175 Pa. 95.

The trusts declared in the agreement of August 18, 1924, were valid: DeRoy v. Richards, 8 Pa. Superior Ct. 119.

OPINION BY MR. JUSTICE SADLER, April 11, 1927:

The Sullivan Pocahontas Coal Company was the holder of more than sixty per cent of the stock of seven mining concerns located in West Virginia. To carry out its operation large financial resources were required, and to raise the necessary funds a mortgage was executed with bonds to the amount of $1,200,000, in which the Union Trust Company of Pittsburgh was named as trustee, the stock of the subsidiary companies and other assets being deposited as security. The mortgagor covenanted that it would keep in good repair the various properties, and provide for the payment of all labor claims, taxes, insurance and other charges. A brokerage firm purchased one-half of the bonds, and agreed to take the remaining portion on condition that $60,000 be sold at 85% of the face value, the proceeds, amounting to $51,000 to be placed in trust to insure the payment of federal taxes covering the years 1917 to 1921, which had been assessed, or which the government might find to be due for the period mentioned.

This understanding was embodied in a letter addressed to the proposed purchaser of the securities, and made a part of the trust agreement in controversy. The contract was signed by the parties, approved by the buyer, and the fund contemplated was handed over. Under the terms of the trust, the money was to be appropriated solely for the payment of taxes as set forth, the amounts when fixed by the federal authorities to be paid to the coal company only on certificates, sworn to by its president and vice-president, showing that the amount asked to be withdrawn was necessary to pay the assessment made by the government, and to be used for no other purpose. The sum of $28,215.95 was so transferred and taxes satisfied pro tanto. A written request

was made, after the present attachment was issued, asking the trustee to remit $21,819.81 directly to the internal revenue collector in West Virginia. There still remains due for the years 1917 to 1921 a sum greater than the balance in the hands of the trustee. The coal company had no interest in the fund until all taxes were satisfied, nor any right to receive any portion except in trust for transmission to the collecting agents. It did have the right to the interest, which might accrue before withdrawal, on the balance remaining in the hands of the trustee, and this amounted to $3,217.52 at the time when this proceeding was instituted.

The agreement provided for the termination of the trust on April 1, 1926, in case all taxes were at that time adjusted and paid. It also provided that if the exact amounts due had not then been ascertained, and waivers of objection had been filed by the subsidiary companies with the federal authorities, the time of its operation should be extended. This condition occurred, and by agreement, in which the purchasers of the bonds, Moore, Leonard & Lynch, were parties, setting forth that the unpaid taxes are greatly in excess of the balance in the trust fund, it was stipulated that the whole remaining sum be retained by the trustee for the purpose of liquidating, as far as possible, the amounts remaining unsatisfied.

Austin-Nichols & Co., the present plaintiff, and a creditor of the defendant, caused a writ of foreign attachment to issue, summoning the Union Trust Company as garnishee. Judgment was entered against the coal company for $28,511.80, and, after the issuance of a preliminary sci. fa., the trustee was called upon to answer the interrogatories propounded. In so doing, the facts as already detailed were narrated. It appeared that defendant had a checking account of $572.80 in the bank, and interest on the fund in question payable directly to the coal company of $3,217.52. As to the re-

maining portion of the $51,000, held for payment of taxes, any right of the defendant therein was denied.

The plaintiff entered a rule for judgment for the total of all three items, and as to the first two, amounting to $3,790.02, it was made absolute, but discharged as to the remainder of the claim. From this order, the plaintiff has appealed, insisting that the fund of $51,000 was really for the benefit of the coal company, which could have secured the balance and appropriated it to other uses than those named in the trust agreement, since it was in reality established for the benefit of the settlor. Further, it was urged that the trust was passive, and that no one had any interest therein except defendant, since the rights established thereunder could not be enforced by the purchaser of the bonds, though they were bought with the understanding that the specific money would be set aside to protect against possible prior claims of the government.

When a creditor makes use of attachment process, he thereby treats the contract by which the garnishee acquired possession of the fund in his hands as valid: Vincent v. Watson, 18 Pa. 96. He cannot seize the property of a third party though temporarily held by the debtor (DeRoy v. Richards, 8 Pa. Superior Ct. 119), or moneys held by him for another: 39 Cyc. 71; 28 C. J. 117. His rights cannot rise higher than those which defendant had against the garnishee, and the liability of the latter is measured by his responsibility in case the debtor himself had brought an action to recover: 28 C. J. 92; Reichner v. Reichner, 237 Pa. 540; Riddle v. Etting, 32 Pa. 412; Howard Co. v. Hughes, 12 Pa. Superior Ct. 311; Benedict & Eberle Co. v. Hollman, 68 Pa. Superior Ct. 155. If, therefore, the latter has no cause of action, the attachment must fall: Lane's App., 105 Pa. 49. Likewise, if there has been a prior valid, legal assignment of the amount due, judgment cannot be entered against the garnishee (Hemphill v. Yerkes, 132 Pa. 545; Smith v. Keener, 270 Pa. 578; Sturgeon Bay Bank v. McLaugh-

lin, 63 Pa. Superior Ct. 588), nor can there be where an equitable transfer of title appears (Patten v. Wilson, 34 Pa. 299; Barnes v. Alexander, 232 U. S. 117), even though no notice of ownership was given to the holder of the fund: Jarecki Mfg. Co. v. Hart Bros., 5 Pa. Superior Ct. 422.

The same principle applies when funds are held on special deposit, or in trust for the benefit of third parties (Burger v. Burger, 135 Pa. 499; Farmers & Mechanics Bank v. King, 57 Pa. 202; B. & O. R. R. Co. v. Kensington Land Co., 175 Pa. 95), though the settlor cannot put aside assets for his own use so as to deprive creditors of their rights therein: Nolan v. Nolan, 218 Pa. 135; Patrick v. Bingaman, 2 Pa. Superior Ct. 113. Where funds have been deposited to be used for the payment of specific claims there is an appropriation which places them beyond the grasp of the one attempting to attach: Sharpless v. Welsh, 4 Dall. 279; Watson v. Bagaley, 12 Pa. 164; Johnston v. Root Mfg. Co., 241 U. S. 160; Smith v. Sanborn State Bank, 147 Iowa 640, 126 N. W. 779. And the mere power to revoke (Watson v. Bagaley, supra), or the retention of the right to the balance remaining after the payment of the claims provided for (Vincent v. Watson, 18 Pa. 96), will not affect the status of the parties.

An operative trust is one which imposes upon the one named as the depositary the duty of taking measures to protect the property in his hands: 39 Cyc. 30. A simple trust gives the beneficiary the right to possession and control, and power of disposal for his own use, while a special one confers no more than the right to enforce in equity the intention of the settlor to the extent of his interest: Vaux v. Parke, 7 W. & S. 19. "Whenever it is necessary for the accomplishment of any object of the creator of a trust that the legal estate should remain in the trustee, then the trust is a special active one": Gourley's Est., 238 Pa. 62, 64. And this is true, though the discretion to be exercised is but slight: Hemphill's Est.,

180 Pa. 95. If there be a valid deposit created for the benefit of a third party, the cestui que trust has a standing to enforce the obligation assumed: Willis v. Curtze, 203 Pa. 111; Dolph v. Cross, 153 Iowa 289, 133 N. W. 669. The latter may demand that there be a proper administration of the fund (Fallon's App., 42 Pa. 235; 28 C. J. 120), and the trustee must make distribution in the manner agreed upon: Benedict & Eberle Co. v. Hollman, 68 Pa. Superior Ct. 155.

Whether a fund is to be treated as held in trust for a special purpose, or considered merely as a deposit, creating the relation of debtor and creditor, depends on the circumstances of each particular case. If the facts disclose the existence of the former relation, the attaching creditor has no enforceable claim, unless there be a balance remaining after the agreed obligation has been performed, and then only as to this surplus. A placing of securities in escrow for the benefit of a third party will protect the latter as against creditors (Sexton v. Kessler, 225 U. S. 90); so will the express appropriation of a fund to a certain use, as in the case of moneys deposited solely to pay dividends declared by a corporation, though the checks for the stockholders are drawn by the company (Interborough Case, 288 Fed. R. 334); and the same is true where the money has been clearly set aside for the payment of bond coupons: Rogers Locomotive Works v. Kelley, 88 N. Y. 234. The contrary, however, has been held where the amount was deposited in a coupon account, subject to be withdrawn by the company at its own will, with the power to use for any corporate purpose desired. In such case the relation is merely that of debtor and creditor: Erb v. Banco di Napoli, 243 N. Y. 45. The distinction between a holding in trust and an ordinary deposit, in such situations, is clearly pointed out in the Interborough Case, supra, where a careful discussion of the question will be found.

In the instant case, the deposit was made for the purpose of securing the payment of back taxes, or those

which might be assessed on a revision of the returns for the years 1917 to 1921, and, in consideration of the purchase of the bonds, so that the lien thereof should be protected against prior claims. No beneficial interest was retained in the coal company, except as to interest accruing on balances, until the tax claims were satisfied. It could not secure the corpus except for the purpose of liquidating the taxes levied, and then only on certificates found by the trustee to be in compliance with the terms of the agreement, in which the purchaser of the bonds had joined by giving its approval, wherein it was provided, inter alia, that the funds should be used "for said purpose and not otherwise." The money paid, excepting interest, could not be applied to general corporate purposes, but alone for the object specified, and in so doing the coal company acted in a trust capacity as agent for the depositary. The latter was obliged to make payment to the extent of the fund in its hands, when taxes became due, and this duty could have been enforced by the purchaser of the bonds in order that his interests be protected against prior liens, and the funds were not subject to attachment by general creditors. It was bound to keep the money at interest, and invest the same "in obligations of the United States or any such other securities as may be designated by the company [trustee] and approved by your firm [the purchasers]," and a different disposition of that accruing and the principal was provided for.

The trustee was required to see that the money went to the coal company only on the submission of proper sworn certificates showing the amount payable for taxes, and for no other purpose, and was liable if it acted negligently in so doing, except as relieved by the provisions of the agreement, when it was shown to have acted in good faith. We cannot agree with the appellant that the deposit was for the benefit of the settlor, and that it could apply any moneys which it saw fit to withdraw for its general purposes. It was only in case of a bal-

ance remaining after all government claims had been satisfied that this was permissible, and the record discloses there never was, nor will be, any surplus which could be so devoted. It cannot be said that the trust established was passive, and therefore executed, nor that the contract, made while the coal company was solvent, was within the inhibition of the Fraudulent Conveyance Act of 1921 (May 21st, P. L. 1045). The agreement was entered into for a valuable consideration, and the rights of third parties have intervened, which are entitled to protection.

In many aspects the case of Willis v. Curtze, 203 Pa. 111, is similar to the one at bar. There, the fund was paid to the garnishee, as trustee, with the obligation to pay therefrom for materials and labor required in the construction of a street railway. Though not made clear by the case as reported, the record disclosed that the payments were to be made by the trustee on orders of Lawrence, the president of the contracting company, for work and material actually used, or in payment of drafts for needed supplies. What was said by Justice FELL, in part, at page 113, is pertinent here: "The fund attached was the price of bonds purchased of a contractor who was constructing an electric railway, and who had received them in part payment under the terms of his contract. The road was unfinished and the purchaser, who owned a number of bonds, was unwilling to buy more unless assured that the road would be completed. In order better to secure the investment, it was arranged between these parties that the price of the bonds should be deposited with the garnishee in trust, and by him used to pay for materials and labor necessary for the completion of the road, as the work progressed. The money was so used. Neither at the time of the service of the attachment, nor at any time thereafter, could the contractor have withdrawn this fund. It was pledged for a specific purpose, and the purchaser of the bonds had a vested right as to its appropriation under the

agreement.  The plaintiff, whose judgment was for a debt contracted before the purchase of the bonds, stood in the same position as the contractor."  See also, B. & O. R. R. Co. v. Kensington Land Company, supra.

A careful examination of the record convinces us that the assignments of error should be overruled.

The order of the court below is affirmed at the cost of appellant.