## Homan et al., Receivers, v. First National Bank of Philadelphia

*Charles J. Biddle*, for plaintiffs; *Frederick V. Hebard*, for defendant.

SMITH, P. J., January 5, 1934.—The plaintiffs as receivers for Lake Superior Corporation brought suit in assumpsit against the defendant, First National Bank of Philadelphia, to recover the sum of $5,912.50, which it is alleged is justly due and payable by defendant to plaintiffs upon the cause of action fully

set forth in the statement of claim. The statement alleges that the plaintiffs were duly appointed receivers for Lake Superior Corporation and that the defendant is a corporation, and also pleads the Corporation Act of 1896 of New Jersey, P. L. 277, 298, sec. 65, Compiled Statutes of New Jersey, page 1640, as also sections 66 and 68 of said Corporation Act, at pages 1643 and 1644 of the Compiled Statutes of New Jersey.

In paragraph 4 of the statement of claim, it is alleged: "On or about May 21, 1904, the corporation issued and delivered $3,000,000 principal amount of its bonds, all of said bonds being identical in tenor, dated May 21, 1904, maturing October 1, 1924, payable to bearer, with interest thereon payable to bearer of the coupons annexed thereto upon presentation and surrender of such coupons. On August 29, 1924, the corporation entered into an agreement with a majority of the holders of said bonds whereby the date for the payment of the principal thereof was extended to October 1, 1929."

. Paragraph 5 of the statement sets forth that: "Each of said bonds provided inter alia that the corporation 'acknowledges itself indebted to the bearer hereof in the sum of ————— dollars ($    ), in gold coin of the United States of America, of the present standard of weight and fineness, which sum it promises to pay in such gold coin to the bearer hereof on the first day of October 1924, at its office or agency in the City of Philadelphia, with interest thereon in the meantime at a rate not greater than 5 percent per annum, payable annually on the first day of October in each year, from the net income and revenue of the company for the fiscal year ending the thirtieth day of the preceding month of June as ascertained and declared by its board of directors, in accordance with the provisions of a certain agreement hereinafter referred to, to be applicable to such interest payments, but only upon surrender for cancellation of the respective coupons representing such interest payments hereto annexed as the same respectively mature. Such interest shall not be cumulative and no part thereof unpaid in any 1 year from the income of that year shall be a charge upon or shall be paid from the income of any other year'."

It is also stated in the said fifth paragraph of the statement: "The interest coupons attached to said bonds provided as follows: 'On the first day of October 19—, Lake Superior Corporation will pay to bearer at its office or financial agency in the City of Philadelphia such sum not less than one and not greater than 5 percent upon the face of the bond to which this coupon is annexed, as shall be duly ascertained and declared by the board of directors of the company to be payable upon said bond from the net income of the company.' "

The trust agreement mentioned in the bonds is fully set out in the seventh paragraph of the statement of claim; and it is alleged in the eighth paragraph that "from time to time during the term of said bonds the board of directors of the corporation declared and ascertained the interest to be payable thereon in each year. A resolution passed by said board on August 16, 1910, read as follows: 'Be it therefore resolved that the board of directors of Lake Superior Corporation hereby declares that the amount of net income for the fiscal year ending June 30, 1910, applicable to the payment of interest on the income bonds secured by the above recited agreement is the sum of $75,000. . . . That out of the said net income so applicable to the payment of interest on the said income bonds there be set aside the sum of $75,000, being an amount sufficient to pay on the first day of October 1910 interest at the rate of 2½ percent for the year ending June 30, 1910, on all the bonds issued under the said agreement and outstanding. . . . And the board of directors . . . hereby declares that the amount of interest payable on the same income bonds be 2½ percent for the year ending June 30,

1910, and that the same be payable at First National Bank in the City of Philadelphia, Pa., on October 1, A. D. 1910, on presentation of the coupons therefor. . . . That the proper officers be and they are hereby directed and authorized to make and publish notice in accordance with the terms of the trust agreement in regard to interest coupons on such income bonds.' "

It is further alleged that all other resolutions declaring interest payable on said bonds were identical in form with the resolution above quoted, with the exception of the dates and amounts declared payable thereon, and that at each annual declaration the board by resolution also determined the agency in Philadelphia at which the interest should be payable and authorized the publication of notice of the amount of such interest and the place where it would be payable, and each of such resolutions, also, was identical with the exception of dates and amounts payable.

It is further alleged that on or before the respective due dates of the interest coupons, for the purpose of having available the funds for their payment, the corporation deposited with defendant in cash an amount equal to the amount then due upon all such coupons, and at the same time authorized the defendant to pay out of such funds so deposited and for the account of the corporation such interest coupons then maturing as should be presented to defendant; and that the defendant has from time to time, under such authorization and out of the funds so deposited with it, paid such coupons as have been presented to it; but there now remains in defendant's possession a balance in cash of $5,912.50, the amount of interest due by the corporation upon bonds the interest coupons appurtenant to which have never been presented to defendant for payment.

Paragraph thirteen of the statement of claim sets forth that by writing dated March 23, 1933, the corporation assigned to the plaintiffs as receivers all of its right, title, and interest in the said sum of $5,912.50; and in paragraph fourteen the plaintiffs set forth that they have elected to revoke the prior authority of defendant to pay any of said coupons now outstanding and not heretofore presented for payment, and that although they have frequently demanded payment to them by defendant of said sum the defendant has refused so to do.

An affidavit of defense was filed by the defendant admitting paragraphs one to nine, inclusive, of the statement. As to paragraph ten, the defendant states that it admits that "on or before the respective due dates of the interest coupons attached to the bonds described in paragraphs four to seven of plaintiff's statement of claim, Lake Superior Corporation deposited with the defendant in cash an amount equal to the amount then due upon all such coupons and at the time of each such deposit the corporation authorized the defendant to pay out of the funds so deposited the interest coupons then maturing on such bonds which might be presented to it for payment," but the defendant avers that "the funds so deposited were the funds of the bondholders and not of Lake Superior Corporation and that by said deposits the said Lake Superior Corporation parted with all control thereover."

The defendant in paragraph eleven of the affidavit of defense admits that it has from time to time, in accordance with the authorization of the corporation and out of the funds deposited by it with defendant, paid such coupons as have been presented for payment, and there now remains in its custody $5,912.50, representing balances for the several years mentioned occasioned by the non-presentation of the coupons payable out of the funds for the respective years mentioned in this paragraph, etc., but denies that this fund belongs to the corporation or the plaintiffs herein, or that the corporation or the plaintiffs as receivers have any right, title, or interest therein.

The plaintiffs have asked for judgment for want of a sufficient affidavit of defense, and the question that is presented to the court at this time is whether or not the averments in the plaintiffs' statement of claim are sufficiently answered by the defendant.

It would seem that the real question involved in this case is whether or not under the admitted facts the deposits made by Lake Superior Corporation for the payment of coupons incident to the bonds were impressed with a trust in the possession of the defendant in favor of the bondholders, or they were simply special deposits giving rise to the relation of debtor and creditor as between the corporation and the defendant.

In the case of Austin-Nichols & Co., Inc., v. Union Trust Co., Garnishee, et al., 289 Pa. 341, 348 (cited by counsel for both plaintiffs and the defendant), Mr. Justice Sadler, speaking for the appellate court, said: "Whether a fund is to be treated as held in trust for a special purpose, or considered merely as a deposit, creating the relation of debtor and creditor, depends on the circumstances of each particular case." Counsel for plaintiffs relies upon the ruling of the appellate court in this case and the case of Randolph et al. v. Washington-Virginia Ry. Co. et al., 15 D. & C. 77.

In Austin-Nichols & Co., Inc., v. Union Trust Co., Garnishee, et al., supra, it is held, reading from the syllabus: "4. Where funds are held on special deposit or have been deposited to be used for the payment of specific claims there is an appropriation which places them beyond the grasp of one attempting to attach.

"5. A mere power to revoke, or the retention of the right to the balance remaining after the payment of the claims provided for, will not affect the status of the parties.

"6. Whenever it is necessary for the accomplishment of an object of the creator of a trust that the legal estate shall remain in the trustee, then the trust is a special active one.

"7. If there be a valid deposit created for the benefit of a third party, the cestui qui trust has a standing to enforce the obligation assumed."

In the case of Randolph et al. v. Washington-Virginia Ry. Co. et al., supra, it was held (reading from the syllabus): "1. A depository of money for the specific purpose of paying interest due on coupon bonds issued by the depositor is not a trustee but an agent of the depositor to distribute the moneys as directed, its authority being revocable at the will of the depositor unless it expressly accepts a trust obligation with respect to the deposit or enters into a special agreement to use the money to pay the designated beneficiaries.

"2. A bank with which a deposit has been made by a corporation issuing bonds, for the payment of interest to the holders thereof upon presentation of the coupons, is under no obligation to such holders, nor is the money impressed with a trust inuring to the benefit of the bondholders, but the bank is merely a fiscal agent of the debtor corporation, whether it pays out the money directly or on checks of the depositor and whether or not the deposit is put by it into a special account."

Our attention has been called to the case of In re Interborough Consolidated Corp., 288 Fed. 334, in which Rogers, C. J., discusses fully and at length the questions of special funds set aside for declared dividends, coupon trust funds, special bank deposits, trusts, equitable liens, etc. A careful reading of this opinion fully accords with what was said by Mr. Justice Sadler in Austin-Nichols & Co. v. Union Trust Co., supra, namely, whether a fund is to be treated as held in trust for a special purpose, or considered merely as a deposit creating the

relation of debtor and creditor, depends on the circumstances of the particular case.

Counsel for the defendant in the instant case emphasizes the fact that Lake Superior Corporation, by reason of its special and elaborate plan for taking care of the mortgage bonds and coupons, has created a trust fund for the benefit of the bondholders which was irrevocable; in other words, that such funds after they were placed in the possession of the defendant belonged to the bondholders and coupon holders, and the corporation could not repossess or use it for any other purpose.

Our attention is directed to the following points of difference between the instant case and the ordinary case of the creation of a special coupon fund, in that in the instant case (*a*) the board must ascertain and declare the amount of net income for a particular fiscal year, and in the absence of net income there is no obligation imposed on the corporation to pay that particular coupon or any part of it; that this places the holders of coupons in much the same position, so far as their income is concerned, as is held by stockholders of the corporation; (*b*) the amount of net earnings is to be determined by the board by deducting from gross earnings all expenses incident to operation and maintenance, including such as in their judgment may be necessary to maintain and renew the property, plants, and equipment and to increase the equipment to the extent commensurate with the business requirements of the corporation; here again the right of coupon holders to receive interest is dependent upon the determination of the expense account, as in the case of stockholders in regard to their right to receive dividends; (*c*) that, having determined the amount of net earnings, the board "shall set aside an amount sufficient to pay" the interest; this provision evidences an obligation assumed by the corporation to set aside a special coupon fund, and there is no such obligation imposed in the case of the creation of a special coupon fund in any of the cases which hold that that fund is not a trust fund for the benefit of coupon holders; (*d*) an obligation is imposed upon the board not merely to set aside but to deposit such amount of net earnings for disbursement; no such obligation is imposed by ordinary coupons, where the only obligation is to pay a specified amount at a specified time and place. The board was required to publish notice in New York and Philadelphia newspapers of the amount of earnings available for payment of interest maturing at the particular time and the place of payment. No such obligation is imposed upon the corporation in the case of maturing coupons. No notice whatever is required to holders of coupons, but in the case of dividends it is the universal practice to publish the fact that the board has declared a dividend. It was also provided that the interest "shall not be cumulative and in case the board of directors shall ascertain and determine that there are no amounts covered by any interest coupon maturing during such period applicable to the payment of interest, the coupons for such period and the obligation of the company thereon shall cease, be void, and become of no effect."

Therefore it will readily be seen that the facts of the instant case differ widely from any of the cases cited by counsel for either plaintiffs or defendant. We believe that a careful study of the plan of Lake Superior Corporation fully warrants the court in coming to the conclusion that when it paid to First National Bank the moneys to take care of the bonds and coupons incident to the $3,000,000 mortgage that had been placed upon its property, it created a trust fund for and in the interest of the bondholders and coupon holders; and that neither the corporation nor its receivers have the power now to revoke this

arrangement and take back the moneys that had been placed with the defendant as a trust fund to meet its bond and coupon obligations.

Having come to this conclusion, the rule for judgment for want of a sufficient affidavit of defense must be discharged.

And now, January 5, 1934, the rule of plaintiffs for judgment for want of a sufficient affidavit of defense is discharged.

NOTE.—This order was reversed by the Supreme Court of Pennsylvania and the entry of judgment in plaintiffs' favor directed, in an opinion filed on May 21, 1934.