## The Girard Life Insurance, Annuity and Trust Co. *versus* The Farmers' and Mechanics' National Bank.

1. The service on a minor under fourteen years in real actions, spoken of in the Act of June 13th 1836, is personal; it does not refer to cases where the defendants cannot be found in the county.

2. The legal effect of a return of *nihil habet* in partition, in which a minor is a defendant, is that there is no one in the county upon whom service of the writ against the minor could be made.

3. The writ in partition was against "—— Wilder" amongst others. If this was irregular, a lien-creditor of one of the parties could not object collaterally.

4. A lien-creditor is not entitled to notice of proceedings anterior to the sale of the property on which his lien rests.

5. The omission of the Christian name of a party in partition, does not prevent the court from obtaining jurisdiction over him by publication.

6. At the time a judgment *quod partitio fiat* was rendered, it was entered on the minutes of the court; this was sufficient, although not entered in the appearance-docket.

7. That the proceedings were not copied at length into the partition-docket under the Act of April 25th 1850, could have no effect on a sale made by order of the court. It was not the purchaser's duty to see that they were transcribed.

8. A sale under proceedings in partition is more strictly judicial than a sale under execution.

9. It is a rule of almost universal application, that judicial sales in Pennsylvania discharge all liens. Exceptions to the rule are allowed only from necessity.

10. Under an Orphans' Court sale in partition, the entire interest of the heir passes to the purchaser free from all liens upon it.

11. A sale made in partition by writ under the Act of 1799, discharges the lien of judgments and mortgages on the land sold.

12. The lien of a mortgage after sale in partition by writ, is not preserved by the Acts of 1830 and 1845.

13. "Execution" means a *writ* to give possession of a thing *recovered* by judgment or decree, and is distinguishable from a mere order of sale.

14. A first mortgage is discharged by a sale under an order of the Orphans' Court; an order of sale in partition by writ is no more an execution than the order of the Orphans' Court.

March 6th 1868. Before STRONG, READ, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius.

Certificate from Nisi Prius: No. 223, to January Term 1867.

This was an action of ejectment brought by the Farmers' and Mechanics' National Bank against the Girard Life Insurance, Annuity and Trust Company, for the one undivided third part of certain property on Market street below Eighteenth street, Philadelphia.

Prior to and at the 4th of January 1849, the title to the *whole* premises was vested in Paul D. Geisse, Anna Maria Everly and Augustus Henry Geisse, as tenants in common. Anna Maria Everly was the wife of William A. Everly, and Augustus H.

[Girard Life Insurance Co. *v.* Farmers' and Mechanics' Bank.]

Denckla held the legal title to her interest as her trustee under a marriage settlement. On the 4th of January 1849, Paul D. Geisse gave a mortgage on his undivided third to the plaintiff in this case. On the 23d of January in the same year, Paul D. Geisse made his will, devising all his real estate to his wife for life, and after her death to his daughter Clara in fee.

On the 20th of April 1853, a summons in partition in the District Court of Philadelphia was issued at the suit of Augustus Henry Geisse, against Christian H. Denckla, trustee of Anna M. Everly, —— Wilder and Clara his wife, and Clara Geisse, a minor.

The summons commanded, "that you summon Christian H. Denckla, trustee of Anna M. Everly, —— Wilder and Clara his wife, and Clara Geisse, a minor, late of your county, so that *he* be and appear before our judges," &c.

The sheriff returned: "Service accepted as above for Christian H. Denckla, trustee, *nihil habet* as to the other within-named defendants, and published as commanded once a week for six weeks in the 'North American,' a daily newspaper, published in the city of Philadelphia."

On the 26th of May 1853, the record was amended by changing *Christian* H. Denckla to *Augustus* H. Denckla.

June 18th 1853, the court appointed Thomas Fletcher (prothonotary) guardian *ad litem* of Clara Geisse, one of the defendants, a minor under the age of fourteen years. By a paper signed by the counsel in this case, it was agreed that when the record was about being made up in December 1866, there was no entry of judgment on the appearance-docket, or on the judgment-index; but the following entry was found on the minutes of the court :—

"It appearing that service of the writ in this case was made according to the provisions of the Act of Assembly, and no defence having been made against the plaintiff's demand, the court proceed to examine the title and quantity of the parts and purparts of the respective defendants, as well as of the plaintiff. Whereupon it is considered that the title or purparts are as stated and set forth in the plaintiff's declaration, and on motion of John H. Campbell, attorney for plaintiff, it is ordered that judgment be entered for the plaintiff, and a writ is awarded to make partition, whereby such parts or purparts shall be set out in severalty, and that the said writ to make partition be published in the 'Pennsylvanian,' a newspaper in the city, according to law."

In consequence, one of the clerks of the prothonotary, without the knowledge of counsel on either side, then (December 1866) made an entry in the said appearance-docket, as follows: "June 18th 1853, judgment *quod partitio fiat* and order of publication

[Girard Life Insurance Co. *v.* Farmers' and Mechanics' Bank.]

made (see minutes)," and also interlined an entry in the judgment-index, in the following form:—

"Denckla, Augustus H., trustee, &c., Augustus H. Geisse, J. 53, 16, Campbell, June 18th 1853. Part.

"Geisse, Augustus Henry, A. H. Denckla, J. 53, 16, Campbell, June 18th 1853. Part.

"Geisse, Clara, Augustus Henry Geisse, J. 53, 16, Campbell, June 18th 1853. Part."

*Breve de partitione facienda* was issued on this judgment, to which the sheriff returned—

"Service accepted and advertised for six weeks, and valued and appraised at $12,000," &c. And September 5th 1853, the court approved of the sheriff's return, and granted a rule on all the parties interested, returnable on the 17th instant, to take or refuse the premises at the valuation thereof, said rule to be published once a week for two weeks. On the 17th of the same month, proof of publication of the rule, and the refusal of the parties to take the premises at the valuation were filed, and on the same day the sheriff was ordered to sell the premises, &c. The sheriff returned, that he had sold the premises to John R. McCurdy on the 7th of November 1853, for $5400. The defendants below derive title from McCurdy.

On the 21st of April 1863, the plaintiffs recovered a judgment for $7278.88 on their mortgage against Philip D. Geisse. On this judgment P. D. Geisse's interest in the premises was sold for $550; purchased by the plaintiffs, and a sheriff's deed made to them July 14th 1866. Under their title thus obtained, they claimed to recover the undivided one-third of the premises in question.

Strong, J., at Nisi Prius, directed the jury to find for the plaintiffs, and subsequently ordered udgment to be entered on the verdict.

On the certificate of the case to the court in banc, these directions were assigned for error.

*H. Wharton* and *Meredith*, for plaintiffs in error.—Encumbrances on the share of one tenant in common fall and are confined to his allotted share: Bavington *v.* Clarke, 2 Penna. R. 124; Jackson *v.* Pierce, 10 Johns. 414. No tenant in common can do any act or suffer any encumbrance which will destroy or impair the right of his co-tenants to a fair and equal partition by sale if necessary: Rudd *v.* Tucker, Cro. Eliz. 803; s. c. 2 Rep. 68, 4 Kent 368; Bartlett *v.* Harlow, 12 Mass. 348; Duncan *v.* Sylvester, 24 Maine 482; Mitchell *v.* Hazens, 4 Conn. 495; Griswold *v.* Johnson, 5 Id. 363; Jewett *v.* Stockton, 3 Yerger 492; 1 Wash. Real Prop. 417; Diermond *v.* Robinson, 2 Yeates 324. The discharge of liens by judicial sales is the fundamental rule where not altered by statute: Willard *v.* Nor-

ris, 2 Rawle 56; Presbyterian Corporation v. Wallace, 3 Id. 136; McGrew v. McLanahan, 1 Pa. R. 44; Tower's Appropriation, 9 W. & S. 104; Northern Liberties v. Swann, 1 Harris 113; Act of March 23d 1864; 1 Hall & Sellers (Dall.) 440; 2 Peter Miller's L. 1748; Bradford's L. 48.

Sales under proceedings in partition are judicial: Allen v. Gault, 3 Casey 473; Sackett v. Twining, 6 Harris 202; Jacob's Appeal, 11 Id. 477; Act of April 11th 1799, § 2, 3 Sm. L. 387, Purd. 773, pl. 21; Browne v. Brown, 1 P. A. Browne 97; Petry v. Beauvarlet, 1 Binn. 97; Acts of March 29th 1832, § 49, Pamph. L. 206, Purd. 299, pl. 157; April 6th 1830, § 1, Pamph. L. 293, Purd. 325, pl. 97.

As to the regularity of the proceedings: Dewar v. Spence, 2 Whart. 211; Leveringe v. Dayton, 4 Wash. C. C. R. 698; Acts of April 3d 1843, § 1, Pamph. L. 127; April 22d 1856, § 3, Pamph. L. 532, Purd. 575, 576, pl. 23, 26; April 25th 1850, Pamph. L. 574, Purd. 775, pl. 37; Mitchell v. Hamilton, 8 Barr 486; Stat. of 4 Anne, c. 16 (1705); Roberts's Dig. 43.

*E. J. Miller* (with whom was *R. L. Ashurst*), for defendants in error.—The omission of the Christian name of Wilder, no process having been served on him, does not conclude him: Blackwell v. Cameron, 10 Wright 236; Castle v. Matthews, Hill & Den. 438; Zimmermann v. Briggans, 5 Watts 186; Prowattain v. McTier, 1 Phila. R. 105; Heil's Appeal, 4 Wright 454; Houser v. Jones, 1 Phila. R. 394.

The service on the minor was not properly made: Swain v. Fidelity Ins. Co., 4 P. F. Smith 455.

The omission to enter judgment was fatal: Wilson v. McCullough, 7 Harris 77.

As to the discharge of the mortgage by the sale in partition: Seaton v. Barry, 4 W. & S. 183; Horner v. Hasbrouck, 5 Wright 176; Allen v. Gault, 3 Casey 475; Simon v. Simon, 1 Miles 404; Snively v. Commonwealth, 4 Wright 81; Commonwealth v. Pool, 6 Watts 33; Lucas's Appeal, 3 P. F. Smith 407; Wilson's Appeal, 9 Wright 435; Dresher v. Allentown Water Co., 2 P. F. Smith 225; McLanahan v. McLanahan, 2 Penna. R. 279; Kyner v. Kyner, 6 Watts 226; Bavington v. Clarke, 2 Penna. R. 115; Diermond v. Robinson, 2 Yeates 324; Ferree v. The Commonwealth, 8 S. & R. 312; Wharton's Dict. of Jurisprudence 14; New Lib. Law & Eq. 358; 3 Inst. 212; Bellas v. Dewart, 5 Harris 90; Allnatt on Part. 70; Garro v. Thompson, 7 Watts 419; Perry v. Brinton, 1 Harris 202; Clarke v. Stanley, 10 Barr 482; Bratton's Appeal, 8 Id. 164; Act of April 16th 1845, § 5, Pamph. L. 489, Purd. 326, pl. 326; Acts of 1799 and 1830, *supra.*

[Girard Life Insurance Co. *v.* Farmers' and Mechanics' Bank.]

The opinion of the court was delivered, March 19th 1868, by STRONG, J.—The question raised by this record is, whether the lien of the mortgage of Paul D. Geisse to the Farmers' and Mechanics' Bank, on his undivided third of the lot in dispute, was divested by the sale made by order of the District Court, in the action of partition brought by one of the tenants in common against his co-tenants. The plaintiffs contend that the lien of their mortgage was not disturbed by the sale for two reasons. The first is, that the proceedings in the action of partition were so defective and irregular that in law they are a nullity as to the one undivided third mortgaged, and the second reason is, that it is not the law that a mortgage given by one of several tenants in common upon his undivided interest is discharged by a sale in proceedings in partition, instituted and duly conducted by one of the other tenants in common. It must be admitted that the proceedings in the action of partition, the effect of which is now under consideration, were in some respects irregular. Whether there was anything worse than mere irregularity, anything requiring us to hold that all the tenants in common were not bound by the action of the court, we will proceed to inquire. The plaintiffs insist that the District Court had not jurisdiction of all the parties, and particularly of the owners of that third which had been mortgaged to them. At the time when the writ was sued out the owners of the land were Augustus Henry Geisse, who owned one undivided third, Augustus H. Denckla, who held one-third as a trustee of Anna M. Everly, and Clara Geisse, a minor, who owned the other third, subject to a life estate in her mother, Clara A., alleged to have been married to —— Wilder. In the action Augustus H. Geisse was the plaintiff, and the defendants named were Christian H. Denckla (afterwards amended by substituting Augustus for Christian, trustee of Anna M. Everly), —— Wilder and Clara his wife, and Clara Geisse, a minor. Service of the writ was accepted by Denckla, and as to the other defendants the sheriff returned " *Nihil habet,* and published, as commanded, once a week for six weeks." By the express provisions of the 1st section of the Act of March 26th 1808, and the 4th section of the Act of April 11th 1835, this was an effectual service of the writ upon the defendants as to whom the sheriff returned "*nihil habuit,*" and it brought them within the jurisdiction of the court. It is a mistake to argue, as has been argued, that because Clara Geisse was a minor under the age of fourteen years, service of the writ upon her could only be made by service upon her next of kin, as required by the Act of June 13th 1836, relative to real actions. The service spoken of by that act is personal. The requirement has no reference to cases where the defendants cannot be found in the county. Service in such cases is provided for by other Acts of Assembly. And in this case the legal effect of

the sheriff's return is, that there was no one in the county upon whom service of the writ against the minor could be made. Besides this, after the return, and after a declaration had been filed, setting forth the title of all the parties, the court expressly determined that it appeared service had been made according to the provisions of the Act of Assembly, and they gave judgment.

Again, it is objected that the writ did not designate —— Wilder, the husband of the tenant for life, by any Christian name, and therefore that the publication of the substance of the writ could not have been notice to him or to his wife, or to the mortgagees of her interest. It is to be observed that this objection is urged by a lien-creditor, and urged collaterally to the record. It is not made by any of the parties to it. But a lien-creditor is not entitled to notice of proceedings anterior to the sale of the property on which his lien rests. Neither Wilder nor his wife ever complained that they were not parties to the record, and were not duly summoned to appear. It is useless to discuss the question how far third persons, who had no right to be heard in the case, can object to the omission of the Christian name of one of the defendants. Certainly they cannot if the court had jurisdiction over the parties by any name, and having such jurisdiction, gave judgment *de terris*. There is no analogy between misdescription of the names of parties in an action of partition, and misnomer of parties on a lien-docket. The effect of the latter is due to statutory requirement. A lien-docket is part of a system of statutes against frauds, but the substance of a writ of partition is notice to the parties in interest to appear. We hold, therefore, that the omission of the Christian name of Wilder, if he had one, did not prevent the court from obtaining jurisdiction over him and his wife by the publication made by the sheriff.

Nor is there anything in the objection that the summons required only Christian H. Denckla (as amended, Augustus H. Denckla) to appear. There are clerical errors in the writ, but the fair construction of it is, that it was directed to all the tenants in common except the plaintiff. The writ was so served. The court adjudged that service had been made upon all, and determined the interests of all; giving judgment that the part of each should be set out in severalty. We hold, then, that notwithstanding some faults and mistakes, which it is now too late for any of the parties to take advantage of, the District Court had jurisdiction of all the parties in interest.

The plaintiffs next object, that there was no judgment "*quod partitio fiat,*" which was a necessary prerequisite to either partition, or a sale. But this is a mistake. None was entered upon the appearance-docket until after the sale was made. The absence of such an entry does not disprove the existence of a judgment. One was entered upon the court minutes, and that

[Girard Life Insurance Co. *v.* Farmers' and Mechanics' Bank.]

is sufficient. The neglect of the prothonotary to transfer it to the appearance and lien dockets, at the time when it was entered, did no injury to the parties, nor to any person.

That the proceedings were not copied at length into the partition-docket, as required by the Act of April 25th 1850, it is hardly necessary to say, can have no effect upon the sale made under the order of the court. It was not the purchaser's duty to see that they were transcribed, and he had acquired his title before the transcript could be made.

These are the principal objections urged against the validity of the proceedings ·in partition, as against the owners of the undivided third of the lot mortgaged to the plaintiffs. There are some minor ones, which have no weight. In view of them all, we think that the proceedings in partition cannot now be successfully assailed, either by Mr. and Mrs. Wilder, or Clara Geisse, much less by the plaintiffs, who are strangers to the record.

We come then to the more general question, whether a sale in partition by writ discharges the lien of a mortgage on the undivided interest of one of the parties. A sale in partition is always for the purpose of enabling division. It is authorized only, when it has been determined that the land, which is its subject, cannot be divided according to the command of the writ, "without prejudice to, or spoiling the whole." When that appears, the law directs a sale in order to convert that which is impartible, into an equivalent that is capable of distribution. Such a sale is eminently judicial—more strictly so than is a sale by a sheriff under an execution. It is made under an order of the court; its subject is in the hands of the court; and the proceeds are necessarily brought into court for distribution. The Act of 1799 requires, that the moneys or securities realized from the sale "shall be brought into court," to be distributed. The whole proceeding is more directly the act of the court than is any other sheriff's sale, where the officer acts under instructions of the attorney, and where he may and often does distribute the purchase-money of the property sold, without any supervision or direction of the court. That Orphans' Court sales in partition are judicial sales was decided in Sackett *v.* Twining, 6 Harris 202, and recognised in Jacob's Appeal, 11 Harris 477. I am not aware that it has been directly decided whether a sale in partition, by writ in a common-law court, is judicial or not, though Allen *v.* Gault, 3 Casey 473, substantially rules that it is. But without any positive determination, it is impossible to doubt that it is to be so regarded. It certainly has everything which in other cases is regarded necessary to make a sale judicial, and it is even less under private control than almost any other which is confessedly such.

Next it is to be observed that judicial sales in this state dis-

charge all liens. This is a rule of almost universal application. There are indeed some exceptions to it, created by express statutory enactment, and others growing out of the peculiar character of the lien or encumbrance; but it has long been regarded as sound policy, that property purchased at a judicial sale should pass into the hands of the purchaser clear of all mere liens. Exceptions to the rule are allowed only from necessity. If property be thus sold, the chances are greatly increased that it will bring its full value, thus benefiting alike the owners and liencreditors. Sales in partition have never been recognised as exceptional, and it is not easy to discover any reason why they should be. In them it is as much for the interest of the owners of the land, and for holders of liens upon it, or parts of it, that purchasers shall not be compelled to look after encumbrances, as it is in any other judicial sale. And encumbrancers have the same notice that is given to them in ordinary cases of sales under a venditioni exponas. They have no reason to complain, therefore, if their liens be discharged from the land, and attached to its full equivalent, the proceeds of the sale. Surely a sale in partition should not be taken out of the general rule which regulates judicial sales and their consequences, without some controlling reason. Exceptions are not to be multiplied unnecessarily.

There is a close analogy between proceedings in partition in the Orphans' Court and proceedings in partition by writ. The object in both is the same, and the modes of accomplishment are not unlike. Yet there is no doubt that under an Orphans' Court sale in partition, the entire interest of an heir passes to the purchaser, who takes it disencumbered of all liens. In Commonwealth *v.* Pool, 6 Watts 32, it was held that liens might be satisfied out of the proceeds of sale. This would have been impossible, had the sale in that case not worked an entire conversion. And the Act of March 29th 1832, though it did not expressly enact that sales in Orphans' Court partition shall divest liens, recognised that such must be the effect. The 49th section declared that "in all cases where, in consequence of proceedings in partition, the share, or any part thereof, of an heir in real estate shall be converted into money, either by reason of the impracticability, or inequality of partition, or by virtue of a sale or otherwise, the Orphans' Court before making a final decree confirming the partition, or sale as aforesaid, may appoint a suitable person as auditor, to ascertain whether there are any liens or encumbrances on such real estate affecting the interests of the parties; and if it shall appear by the report of such auditor, or otherwise, that there are such liens, the said court may order the amount of money which may be payable to any of the parties against whom liens exist to be paid into court, and shall have like power as to the distribution thereof among the creditors, or others, as is now exer-

[Girard Life Insurance Co. *v.* Farmers' and Mechanics' Bank.]

cised by the courts of common law, where money is paid into court by sheriffs or coroners." In their remarks upon this section the commissioners to revise the civil code speak of it as an act of justice to possessors of encumbrances upon the interests of heirs in real estate, "which being converted into money by proceedings in partition, the security of the encumbrances becomes seriously impaired." If sales in Orphans' Court partition divest liens upon the interests of the parties, certainly sales in partition by writ must work the same result. It is impossible to find any reason for a distinction. None is found in the fact that the Act of 1799 allows the sheriff to take securities, instead of money, for the sum bidden at the sale, for he must bring the securities into court, where they are to be treated as a substitute for the land. Besides, it has been held that in some cases, an Orphans' Court may decree a sale on time: Davis's Appeal, 2 Harris 371; Baily's Appeal, 8 Casey 40. The court can deal with securities taken as with money.

It is worthy of notice that though the question before us has not been hitherto expressly decided by this court, the practice to distribute the proceeds of sale in common-law partition among lien-creditors of the parties has been partially sanctioned. In Browne *v.* Brown, 1 P. A. Browne's Reps. 97, it was assumed that in such a case the sheriff could not safely distribute the money among the parties without ascertaining what liens were upon the estate. There were judgments against some of the parties to the partition in that case, which the sheriff paid, or retained money to pay, and he was allowed for searches for judgments and mort-gages. In Willard *v.* Norris, 1 Rawle 64, this court, remarking upon the case of Browne *v.* Browne, observed that "nothing could more clearly show how notorious is the rule that in every judicial sale in Pennsylvania the land goes to the purchaser clear of all judgments and mortgages, and that out of the purchase-money, the sheriff, at his own risk, is to pay off all these liens according to their priority, insomuch that though the Act of Assembly about partitions makes no mention of liens, yet by analogy, drawn from the notorious usage of the Commonwealth, an allowance was adjudged to the sheriff for the fees paid for searches for judgments and mortgages, the owners of which might afterwards call upon him for their money."

In addition to this the argument from the inconvenience of sell-ing subject to encumbrances upon the interests of some of the parties, is not without weight. In many cases it would render partition practically impossible. It would produce great difficulty and uncertainty in the distribution, and it would exhibit the anomaly of a right conferred by one tenant in common superior to that which he ever possessed. It is true some of these incon-veniences may exist, even if encumbrances be discharged, as where

there are ground-rents, or liens fixed by statute on the undivided interest of a party. Such are inevitable, but they present no reason for adding others not necessary.

For these reasons we hold that a sale made in partition by writ under the Act of 1799, does discharge the lien of judgments and mortgages upon the land sold, having the ordinary effect of other judicial sales. The consequence of this is that the lien of the plaintiffs' mortgage upon the undivided third of the lot in dispute was discharged by the sheriff's sale in partition, made in November 1853, and their purchase under a judgment subsequently obtained upon it, without notice to the purchasers at the former sale, gave them no title against these purchasers or those claiming under them.

We cannot yield assent to the argument that the lien of the mortgage was preserved by the Act of April 6th 1830, and its supplement of April 16th 1845. The first referred only to sales made by virtue of any writ of venditioni exponas, and the supplement extends the provisions of the act to all cases of sales made by virtue or authority of any writ of execution. The word execution has always been understood as meaning a *writ* to give possession of a thing *recovered* by judgment or decree. It is clearly distinguishable from a mere order of sale. The legislature doubtless intended to use the word in the sense in which it was commonly received. No one supposes that a first mortgage is not discharged by a sale under an order of the Orphans' Court. Yet an order of sale by the Common Pleas in an action of partition is no more an execution than is an order of sale for the payment of debts, or for partition in the Orphans' Court.

We need add nothing more. From what has been said it will sufficiently appear that in our opinion, there was error in giving judgment at Nisi Prius for the plaintiffs.

The judgment is reversed, and judgment is given on the point reserved for the defendants.