## Benedict & Eberle Co., Appellant, *v.* Hollman.

*Attachment execution — Nature of fund attached — Licensed liquor dealer—Bulk sales—Act of March 28, 1905, P. L. 62.*

In order to sustain an attachment execution, there must be a

debt due from the garnishee to the defendant in the judgment which may be payable at the time of the service of the writ, or may become payable subsequently. The right of an attachment creditor can rise no higher than that of his debtor. What the latter cannot sue for and recover from the garnishee is beyond the grasp of an attaching creditor.

Where a wholesale liquor dealer contracts to sell in bulk his lease, personal property and fixtures, good will, etc., for a sum stated, and the purchaser contracts to buy only upon condition that the court transfers the wholesale license to himself, and it is agreed that the purchase-money shall be held in escrow until the license is transferred, and upon the granting of the license the party holding the fund in escrow shall pay the debts of the seller, and turn over the balance to him, but that if the license is not transferred, the money shall be returned to the purchaser, and it also appears that notice of the sale was given to creditors in compliance with the Act of March 28, 1905, P. L. 62, and no objection to this transaction is made by any one, an individual creditor of the seller cannot thereafter attach the fund held in escrow in the hands of the trustee. Such a transaction is neither a voluntary assignment for the benefit of creditors not an act of bankruptcy.

Argued May 3, 1917. Appeal, No. 187, April T., 1917, by plaintiff, from order of C. P. Allegheny Co., Jan. T. 1914, No. 736, refusing judgment against garnishee on answers in case of Benedict & Eberle Company v. Charles Hollman. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Rule for judgment on answers.

From the record it appeared that on October 15, 1913, Charles S. Hollman, a licensed wholesale liquor dealer of Carnegie, Pa., entered into a written agreement with Michael Gerlowsky, the material portions of which are summarized in the opinion of the Superior Court.

The sum of $9,000 was paid over to Prestley & Nesbit to be held in escrow in accordance with the agreement. The license was duly transferred. Benedict & Eberle Company having recovered a judgment against Hollman for $1,300.12 issued an attachment execution and summoned John L. Prestley as garnishee. Answers were

155, (1917).] Assignment of Error—Opinion of the Court.
filed to the interrogatories in the attachment execution,
and judgment on the answers was refused.

*Error assigned* was the order of the court.

*Charles H. Sachs,* for appellant.—The learned court
below, by its disposition of the question involved, chal-
lenged the authority of the following cases: Potts v.
Smith Mfg. Co., 25 Pa. Superior Ct. 206; Peckham's As-
signed Est., 35 Pa. Superior Ct. 330; Climax Road Ma-
chine Co. et al. v. Sheesley, 13 D. R. 649; Cassell's Est.,
13 D. R. 637; Emerick's Petition, 30 Pa. C. C. 289; Nehf
& Sons Est., 14 D. R. 343; Fister's Est., 14 D. R. 881;
Clark Electrode Co., 15 D. R. 64; Marietta's Assignee v.
Frisbee Hardware Co., 43 Pa. C. C. 4.

*S. S. Robertson,* for appellee.

OPINION BY HEAD, J., October 8, 1917:
The single question for our determination is, should
the attaching creditor have judgment against the gar-
nishee on the answers filed. The process of attachment
execution is familiar. We suppose we may assume that
"in order to sustain an attachment execution, there must
be a debt due from the garnishee to the defendant in the
judgment which may be payable at the time of the serv-
ice of the writ or may become payable subsequently."
We quote from Lane's App., 105 Pa. 49. It would fol-
low the right of an attaching creditor can rise no higher
than that of his debtor. What the latter could not sue
for and recover from the garnishee is beyond the grasp
of an attaching creditor. Let us look then to the origin
of the fund in the possession of the garnishee and the
essential nature of the obligation or duty that lies at the
base of that possession.

Prior to October 15, 1913, one Hollman was conduct-
ing a wholesale liquor dealer's business under a license
from the Court of Quarter Sessions of Allegheny County.

On the date named he entered into a written agreement for the sale of his lease, personal property and fixtures, good will, etc., of his business to one Gerlowsky for the sum of $9,000. The parties to this agreement were sui juris and in every way competent to contract. There was nothing illegal, immoral or against public policy in what they undertook to do. The sale contracted for, however, was a sale upon a condition subsequent. The happening or nonhappening of the vital condition depended on the exercise of a power which neither of the contracting parties could control. If the Court of Quarter Sessions of Allegheny County would see fit, in the exercise of its discretionary power, to transfer the wholesale license from the seller to the purchaser, then the sale provided for in the contract would no longer be conditional but absolute and both parties would be bound by the terms of their agreement. Thus far nothing appears to in any way invalidate it.

It was apparent, however, the sale contemplated was within the class of sales regulated by the Act of March 28, 1905, P. L. 62, commonly known as the "Bulk Sales Act." Were it not for the provisions of that statute, the parties to the contract could have, inter sese, carried it into complete execution. But because of that act the purchaser needed some protection in order to be assured that what he had bought and paid for might not be thereafter seized by some of the creditors of the seller. That situation resulted in the insertion into the contract of purchase and sale of the following clause: "The payment of the above mentioned sums shall be made in escrow to the firm of Prestley & Nesbit, Attorneys-at-Law, 902 Frick Building, Pittsburgh, Pa., who shall retain the same until said transfer of license shall be granted or refused, at which time, if said license be granted, they shall apply said sums to the amounts appearing to be owing by said Charles S. Hollman to his creditors and turn the balance, if any, over to him. In case, however, said transfer of said license should be re-

fused, then and in that case Prestley & Nesbit shall return to Michael Gerlowsky the balance of said money after deducting costs and attorney's fees as aforesaid." Notice of the proposed sale and of the application for the transfer of the license was duly given to the creditors of Hollman as required by the Bulk Sales Act. Of course it was desirable they should make no objections in the Court of Quarter Sessions to the proposed license transfer. Such courts, with great propriety, scrutinize with some care, applications for the transfer of a license under such conditions in order to be reasonably assured the transfer is not to be made an instrument to defraud the creditors of the existing licensee. In the case at bar the creditors of Hollman apparently concluded their debtor, with a fund of $9,000, appropriated by the agreement that created it, would be at least as well able to pay what he owed as if he continued in the possession of the property and business he then had. No objection therefore was made by any one. The license was transferred and the whole of the purchase-money was paid into the hands of the trustee named in the agreement we have quoted.

Would it have been legally possible for Hollman, the judgment debtor in the present case, to have thereupon maintained an action against the trustees in the possession of the fund for the recovery of the money? It seems clear to us such an action could not have been successfully prosecuted. The agreement had so far been executed that it was beyond his power to revoke it. The interests of other persons had intervened and there was, as we view it, a valuable consideration furnished by the creditors of which the trustees named were bound to take notice. This was the situation when the appellant company, a creditor, issued its writ of attachment execution. We agree with the learned judge below that the fund in the hands of the garnishee was immune from the grasp of the attaching creditor. The garnishee had accepted the trust created in the agreement referred to

and was bound to distribute the fund in accordance with the conditions of the instrument that created it unless some paramount authority intervened. The valuable rights of others had vested and could not be disturbed or overthrown by the act of an attaching creditor.

On its face the agreement to which we have referred was not, as we view it, either a voluntary assignment for the benefit of creditors or an act of bankruptcy. Whether it was either or both would necessarily depend upon the ascertainment of facts altogether outside of the scope and terms of the agreement. But we do not regard the determination of any such questions as material to the disposition of the single problem here presented. We are satisfied the fund in the hands of the garnishee was beyond the reach of the attaching creditor and that, as a consequence, the conclusion reached by the learned court below was correct.

Judgment affirmed.