## Plumer v. Flynn et al.

*David A. Kraftsow*, for plaintiff.

*Nissenbaum & Maurer*, for defendants Flynn.

*F. Raymond Heuges*, for defendant Stanley Kurcz.

LEWIS, J., April 7, 1953.—This matter is before us on preliminary objections to a complaint in equity. Plaintiff avers that he is a real estate broker of the City of Philadelphia; that on or about October 22, 1951, defendant Stanley Kurcz in writing engaged plaintiff's services as his exclusive agent to sell the restaurant business owned by Kurcz and all of its assets, including the liquor license and the real estate and building in which the business was conducted, known as 3965 North Third Street, Philadelphia, Kurcz agreeing to pay plaintiff a broker's commission of $1,000.

The agreement apparently was made on a partly printed and partly typewritten form used for agency agreements for the sale of real estate, and it recited that plaintiff was employed as sole and exclusive agent

for the sale of the property "described above" for the price of $31,500, and upon the terms mentioned in the agreement, or for or upon any reduced price or other terms to which the owner might consent. The sole and exclusive agency, it was provided, was to continue "until terminated by me upon and after thirty days' prior notice in writing to you given of my intention so to terminate, but in no event shall it be terminated within less than *two* months from the date hereof". The word "two" was italicized in the agreement.

The agency contract further provided that the owner agreed that if the property should be sold or exchanged by him during the term of the agency, whether effected by the agent or by himself or by any other person, the owner would pay to plaintiff a commission of $1,000.

The complaint continues with the averment that on or about November 1, 1952, over a year subsequent to the date of the agreement but while the agreement was alleged to be in force, the owner and the other defendants entered into a written agreement for the sale of the real estate, the liquor license, the equipment and the other assets of the business to defendants Flynn for a total consideration of $31,500, and by reason thereof there became due and owing by the owner to plaintiff a broker's commission of $1,000; that the sale was made in bulk on or about November 1, 1952, and the parties did not comply with the provisions of the Bulk Sales Act of May 23, 1919, P. L. 262, in that the buyers failed to demand from the seller a written, sworn statement listing the names and addresses of all creditors, including plaintiff, and an accurate inventory of stock and fixtures, and that there was a failure to notify plaintiff as a creditor, either personally or by registered mail, and other creditors of the proposed sale and the terms thereof, and a failure to pay or require that the purchase money be applied

to the claim of plaintiff and other bona fide creditors, with the result, as plaintiff contends, that the sale was fraudulent and void as to him, and that defendants Flynn are liable to him as a receiver for the fair value of all property so bought by the Flynns from Kurcz.

The complaint included prayers that the sale be decreed to be fraudulent and void as against plaintiff, and the Flynns be declared receivers of the fair value of the property for the benefit of plaintiff, with a suggested order that defendants pay to plaintiff the amount due him, $1,000, with interest.

Preliminary objections were filed and a motion was made for judgment in favor of defendants on the ground that equity has no jurisdiction over the subject matter, since it is in effect a suit in equity to recover a real estate broker's commission, for which there is full, complete and adequate remedy at law; that the complaint shows no cause of action, since at the time of the sale plaintiff was not a creditor; that the complaint shows plaintiff did not have an exclusive right of sale beyond the first two months subsequent to the date of the agreement; and, finally, that the complaint fails to show that the sale falls within the scope of the Bulk Sales Act.

We are of the opinion that the preliminary objections must be dismissed.

Objection no. 1 is that equity has no jurisdiction over the subject matter. With this contention we cannot agree. The Bulk Sales Act of May 23, 1919, P. L. 262, 69 PS §523, provides that where the act has not been complied with "then such sale or transfer shall be fraudulent and void, and such purchaser, auctioneer, or agent shall, at the suit of any creditor, be held liable to the creditors of the said vendor as a receiver for the fair value of all the property so bought or sold by him".

50

Plaintiff asks the relief given to him by the statute. Violation of the act is a fraud and no further ground is necessary to confer equitable jurisdiction: The Maccabees v. Cappas et al., 164 Pa. Superior Ct. 317.

Objection no. 2 is that plaintiff was not a creditor. We agree with the conclusion reached by Judge Flood in a similar case (Axler v. Forman et al., 39 D. & C. 702) that a broker retained to sell a business for a commission becomes a creditor within the meaning of the Bulk Sales Act at the very moment he brings vendor and vendee together. Like reasoning leads to the conclusion that a broker having an exclusive agency becomes a creditor at the very moment the owner makes a sale of the property.

Objection no. 3 is that the complaint does not set forth a cause of action in that plaintiff is not shown to have had an exclusive right to sell. We cannot make a contract for the parties. It is true that our appellate courts construe very strictly against the broker contracts giving an exclusive right of sale: Wilson et al. v. Franklin, 282 Pa. 189; Senderling v. Boldwin et ux., 92 Pa. Superior Ct. 398. In each of those cases it was held that the contract was only exclusive for a limited period. There was doubt in each case, but no doubt is possible as to the meaning of the language in the contract that was signed by defendant Kurcz herein. There is nothing unlawful to be found in the agreement, and it does say clearly that the exclusive agency "shall continue until terminated by me upon and after thirty days' prior notice in writing". Unless defendant Kurcz can at the trial establish that he gave such prior notice of termination, it would appear that he cannot escape liability for the commission.

Finally, the fourth objection is that the transaction does not fall within the scope of the Bulk Sales Act. The sale of a hotel has been held to be not within the

act (Wilson v. Edwards, 32 Pa. Superior Ct. 295), and similarly the sale of the entire plant of a manufacturing business was decreed not to fall within the act: Gitt v. Hoke et al., 301 Pa. 31. However, in Benedict & Eberle Co. v. Hollman, 68 Pa. Superior Ct. 155, a wholesale liquor dealer's business was treated as subject to the act. And in Lazofson v. Steiner et al., 66 D. & C. 179, Judge Flood held that the act must be complied with upon the sale of a restaurant and taproom. In reaching that conclusion, Judge Flood stated that he relied considerably upon a decision of the late Judge Martin, of Common Pleas Court No. 5, in Martindale v. Knight, 25 Dist. R. 469. We have read Judge Martin's opinion, as well as that of Judge Flood, and the opinion of Judge Sloane, of Common Pleas Court No. 7, in Blau, etc., v. Kolla et al., 55 D. & C. 604. Following these last referred to cases, we hold that the sale of the taproom and restaurant with which we are concerned was subject to the Bulk Sales Act.

Preliminary objections dismissed, with leave to answer sec. reg.