## Allen's Bulk Sale

*Michael J. Cassale, Sr.*, for Personal Consumer Discount Company.

*Julius J. Levy*, for United States.

*Furst, McCormick, Muir & Lynn*, for Alfred A. DiCenso and the Pennsylvania Power and Light Company.

WILLIAMS, P. J., October 30, 1956.—The personal property of Allen's Sunoco Gasoline Station in Wil-

liamsport was sold in bulk to Richard W. Adams. A bill of sale was given and the purchase money was delivered to an attorney pending compliance with the provisions of the Pennsylvania Bulk Sales Act. Each of the creditors of the vendor was notified, and the money was paid into court.

The United States entered a claim as a preferred creditor. An auditor was appointed to make distribution and the auditor allowed the claim of the United States as a general creditor. The United States took exception. The matter of the distribution was returned to the auditor by the court: Allen's Bulk Sale, 5 Lyc. 156 (1956). The auditor was directed to make redistribution. The court suggested to the auditor that the United States was a preferred creditor. The auditor redistributed, holding the United States a preferred creditor, distributing the funds to the United States Government. General creditors have taken exceptions to this report and the matter now comes before us on the same arguments that we heard previously before the matter was returned to the auditor.

Exceptants argue that any lien that the United States had on the goods and chattels sold in bulk does not follow the proceeds of the sale, and if there is such a lien it still exists on the property sold. Exceptants argue that the Pennsylvania law of liens is such that inasmuch as the United States lien has not been discharged and still exists on the property sold, that it cannot exist against the money which is held in escrow for the payment of creditors. The United States claims that it's lien not only exists against the property sold, but also against the funds which represent the purchase price of the property.

We have reconsidered the matter and have come to the same conclusion that we reached in our earlier opinion which directed the auditor, if he found a lien

existed, to distribute the fund to the United States Government as a preferred creditor.

Sections 3670 and 3671 of the Internal Revenue Code of the United States are to the effect that if any person liable to pay any tax neglects or refuses to pay after demand, the amount shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person, and that the lien shall continue until the liability for such amount is satisfied or becomes unenforcible by reason of lapse of time. See 26 U. S. C. §3670, 53 Stat. at L. 448.

The United States Government had a tax lien against the property of the Allen's Sunoco Gasoline Station. There appears to be no dispute as to this fact.

It has been held that when there is such a lien that the lien continues against not only the property owned at the time the lien becomes a lien, but also property later acquired, and that the lien follows funds from such property in the hands of escrow holders. In Golden v. State of California, 133 Cal. App. 640, 285 P. 2d 49, a business and bar busines was sold, the money put into escrow in accordance with the California law, the general creditors gave to the escrow holder notice of their claims within seven days after notice of the intended sale, all this in accordance with the California law as to such sales. The court held that the very moment the taxpayer and his purchaser entered into the contract for the sale of the liquor license the taxpayer acquired a chose in action for the stipulated purchase price, to which the government's pre-existing lien attached, and that when the purchase money was paid into escrow, the tax lien at once attached and later followed the fund when paid into court. It was pointed out in the Golden case that the Federal statute is not dependent upon State law for its implementation, and that the Federal statute does

not require anything to be filed in the State courts to protect its lien except as against a mortgage, pledgee, purchaser or judgment creditor, none of whom are present in the instant case, being unsecured general creditors, that is all but the United States.

The case of the United States v. Blackett, 220 F. 2d 21, is similar in nature. The court said: "It is true that the sale was precipitated by the judgment creditor, but whatever was received through the sale became the property of the vendor-owner, subject, as any other property belonging to him, to valid liens thereon in the order of their priority, in this case, first the tax lien, second the judgment creditor's lien."

We see little merit in the reasoning of exceptants which suggests that when a lien is discharged by the sale, it follows the proceeds from the sale, but when the lien is not discharged by the sale, it does not follow the proceeds of the sale, and the conclusion that inasmuch as the United States' lien was not discharged by the sale, it did not follow the proceeds.

We are of the opinion that the position of the United States does not conflict with the laws of Pennsylvania. Prior to 1830 it was the law in Pennsylvania that all liens were discharged by a judicial sale. All lien creditors were forced to look to the proceeds of the sale for the payment of their claims. Such is still the law except where the legislature has provided that certain liens shall not be discharged: Girard Life Ins. Co. v. Farmers' and Mechanics' National Bank, 57 Pa. 388. Even if we were here dealing with a judicial sale by a judgment creditor, and we are not, the United States would come first in the distribution of the fund as the United States has a prior lien on this personal property. Dealing as we are, with purchase funds in the hands of an escrow holder, the paramount lien of the United States most certainly comes ahead of the general creditors in the distribution of the proceeds of the sale.

As we said previously, the case of Benedict & Eberle Co. v. Hollman, 68 Pa. Superior Ct. 155, does not rule differently. In this case a creditor attempted to attach the funds in the hands of an escrow holder. The court properly ruled against the attachment saying as follows: "The garnishee had accepted the trust created in the agreement . . . and was bound to distribute the fund in accordance with the conditions of the instrument that created it unless some paramount authority intervened. The valuable rights of others had vested and could not be disturbed or overthrown by the act of an attaching creditor." In the instant case the rights of the various creditors had vested. No attaching creditor can change these rights. The right of the United States Government, however, was a preferred right. It's preferred lien was vested, and this preferred lien is a preferred lien on the proceeds of the sale and has priority.

The exceptions are dismissed and the auditor's report and distribution is confirmed absolutely.