## Commonwealth v. Kile

*William S. Beckley*, for Commonwealth.
*R. E. Bull*, for defendant.
*C. W. Dickson*, for garnishee.

KREISHER, P. J., March 13, 1958.—Henry Kile is the minor child, now 17 years of age, of the above captioned defendant and one Raymond Kile.

Following a separation of the married parties, an order of support for said minor child was entered in Luzerne County on October 6, 1939, in the amount of $20 per month against said father.

On November 16, 1942, the parties were granted an absolute divorce by the Luzerne County Court and the said son continued to reside with his mother in said county.

In September of 1946, the Department of Public Assistance on application of the said mother began making a monthly grant of assistance in varied amounts from month to month for the partial support and maintenance of the said mother and two minor children. These grants were continued until June of 1954 at which time defendant remarried a Mr. Peckne.

On July 6, 1954, the said Raymond Kile, having received an inheritance from the estate of his deceased father, Ord Kile, entered into an agreement with defendant to settle the said Luzerne County support action by paying the lump sum of $1,500 for all arrearages and future support of the said minor, Henry Kile.

On said date, a portion of the money was deposited in the first National Bank of Shickshinny, Luzerne County, in a savings account in the names of Ellen Peckne or Henry Kile with the following notation:

"Henry not to withdraw without mother's consent."

The balance of the money was placed in a checking account in the same bank in the name of Ellen Peckne, who thereafter drew on said account for the support and maintenance of said son.

Shortly after defendant's remarriage, the family moved to the Town of Bloomsburg, this county, and all assistance was discontinued after June of 1954.

On January 3, 1955, the above captioned plaintiff caused to be filed in the above captioned court a praecipe for a writ of attachment under the Fraudulent Debtor's Attachment Act of March 17, 1869, P. L. 8, sec. 1, 12 PS §2711, as amended and as modified by the Pa. R. C. P. 1285 to 1292 which became effective October 1, 1954.

The prothonotary, on advice of counsel for plaintiff, issued said writ on the same day and made it returnable to Monday, February 7, 1955.

On the same date, plaintiff filed a complaint in assumpsit setting forth a claim due the Commonwealth in the amount of $7,520.80 on account of the assistance granted by reason of the provision of The Support Law of June 24, 1937, P. L. 2045, set forth in the complaint as follows:

"The real and personal property of a public assistance recipient is liable for the expenses of his support, maintenance, assistance and burial, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred or if the right to ownership of such property existed or was acquired during the time such expenses were incurred."

Paragraph four of the complaint reads as follows:

"Defendant was the owner of personal property at the time the assistance was granted and paid and thus said property is subject to repayment of said assistance.

Paragraph six reads as follows:

"That the Defendant has with intent to defraud the Plaintiff has concealed or is about to conceal property."

The praecipe for the writ of attachment directed:

"The Sheriff to attach all the moneys in the savings account and checking account in the names of Ellen Peckne (formerly Ellen Kile) and in the names of

Ellen Peckne (formerly Ellen Kile) and/or Henry Kile, which are on deposit in the First National Bank, Shickshinny, Luzerne County, Pennsylvania."

Without the filing of any bond whatsoever, counsel for plaintiff caused the prothonotary to issue the writ and directed the sheriff to make service upon the named garnishee by deputization. Accordingly, on January 5, the sheriff of Columbia County deputized the sheriff of Luzerne County to make the service and upon the same date the sheriff of Luzerne County served the writ on the garnishee bank.

On January 7, the sheriff of Columbia County served a copy of the complaint on defendant at 409 West Third Street in the Town of Bloomsburg, this county.

On January 14, counsel for the bank filed a report showing a balance in the said savings account in the amount of $704.25 and in the checking account of $94.91.

On February 7, being the return day of the writ, counsel for plaintiff and the above captioned attorney employed by defendant agreed that all proceedings might be stayed for some reason undisclosed to the court and for an indefinite period of time.

On February 21, counsel for defendant entered his appearance in the office of the prothonotary, and on the same date, counsel for the garnishee presented a petition to the court requesting that he be paid counsel fees in the amount of $25 from the said funds in the bank for preparing and filing said report.

The court, on advice of counsel for the garnishee, made an order fixing counsel's fee at $25 and directed that the same "be taxed as costs and paid out of the funds in the hands of the First National Bank of Shickshinny."

We are now of the opinion this action by the court was not only premature, but improper.

It is true counsel for the garnishee is entitled to a fee under certain circumstances, but this is a matter of statutory law which must be strictly followed: 10 Standard Pa. Practice 420, sec. 214.

In the case of McKown v. Brewer, 45 D. & C. 429, the acts of assembly and the Rules of Civil Procedure in regard to this matter are discussed at length. The pertinent act in the present case is that of April 29, 1891, P. L. 35, 12 PS §3001, which provides, inter alia, as follows:

"Where, in any attachment, attachment execution, foreign attachment, or scire facias on foreign attachment issued out of any court of record in this state, an appearance by attorney shall be, or shall have been entered by any garnishee or garnishees therein each said garnishee so appearing shall be entitled to recover from the plaintiff, in addition to the costs already allowed by law upon any discontinuance or other final disposition thereof, prior to answers filed, a counsel fee of at least ten dollars, to be taxed as part of the costs, and to be determined in case of dispute by the court."

It will be noted this act was passed to prevent vexatious attachments and visits the attorney fee upon plaintiff where plaintiff discontinues the action or where some other final disposition of the case is made prior to the filing of an answer which in our opinion would include the sustaining of a preliminary objection to the complaint and writ.

By the language of Pa. R. C. P. 1285, which is known as the conformity rule of fraudulent debtor's attachment to foreign attachment, it is provided:

"That except as otherwise provided in this chapter, the procedure in all actions commenced by writ of fraudulent debtor's attachment shall be in accordance with the rules relating to foreign attachment."

And, therefore, it would seem to follow that the above quoted act of assembly would apply to fraudulent debtor's attachment even though the same is not so mentioned in the body of the act.

Our subsequent discussion will of necessity resolve this dispute in defendant's favor, and therefore, it is our opinion this cost should not be paid under the circumstances by defendant or her son from the funds in the bank but should be taxed as part of the costs to be paid by plaintiff.

It is true, as will be later pointed out, that defendant filed a pleading called "answer" but it is not in our opinion strictly an answer, and since we intend making a final disposition of this case, we believe the same will be made prior to an answer filed and that the act of assembly applies.

Accordingly, the above mentioned order must be set aside and a new order made placing this cost on plaintiff.

On March 17, counsel for plaintiff caused to be filed with the prothonotary a praecipe for judgment for defendant's failure to file an answer to the complaint and on the same date, the prothonotary entered judgmen in favor of plaintiff and against defendant in the amount of $7,520.80.

For some reason the case was then ruled for argument at the April term of argument court and on April 4, counsel appeared in court and stated the pleadings were incomplete, that counsel were working on the matter and then handed the files to the court, indicating that the same would be brought before the court at some later date.

We thereupon dismissed the matter from our mind and heard nothing further from either counsel until recently in a social conversation with counsel for plaintiff the case was mentioned.

On our return to our office we examined the files and observed that the pleadings mentioned to be filed were not present, and thereupon, after a diligent search in the prothonotary's office, we have now discovered that counsel for plaintiff on April 11, caused to be issued a praecipe for judgment and rule on the garnishee to show cause why a judgment should not be entered in favor of plaintiff, and against the garnishee in the amount of $798.66, being the total amount set forth in the report filed by the garnishee.

On the same date, the prothonotary issued such a rule making the same returnable to May 2, 1955.

The files contain no return of service of this rule, nor do we observe any acceptance of service of the same. However, on May 2, counsel for defendant filed a pleading called an "answer" wherein certain defenses are set forth and the same is concluded with a prayer that a rule be granted upon plaintiff to show cause why the fraudulent debtor's attachment should not be set aside, quashed and stricken off, and meanwhile, all proceedings to stay.

There is attached to the pleading a blank order of court for the issuance of said rule and stay, but this order was never dated or filed by the court, nor was it ever brought to our knowledge.

The case has never been ruled for argument and the last two mentioned pleadings were filed without bringing the same to the court's attention, and, but for the above mentioned conversation, the case would still be lying dormant.

It is now our understanding that both counsel desire the court to dispose of the matter on the foregoing record.

The said pleading of defendant filed May 2, sets forth, in substance, three defenses: First, that the bank accounts reported by the garnishee are not the sole funds of defendant but rather the funds of the

son, Henry Kile, for his support as they arose from the settlement of the Luzerne County support order above mentioned.

Second, that defendant received no assistance after June of 1954, and since this settlement was not effective until July of that year, defendant was not as set forth in the complaint, "the owner of personal property at the time the assistance was granted and paid and thus said property is subject to repayment of said assistance."

Third, that defendant is not now, nor has she in the past, ever fraudulently concealed said bank accounts.

If we consider this pleading of defendant's preliminary objection, which by reason of the conformity rules is permissible, a casual review of the Rules of Civil Procedure relating to fraudulent debtor's attachment would reveal many defects in this proceeding that might be raised to set the proceedings aside in addition to those above mentioned.

Since the agreement of counsel entered into sometime in January of 1944 was not reduced to writing or submitted to the court for approval as is our usual custom in this district, we are at a loss to determine the exact state of the record. However, since the defects are so apparent and so numerous, and since the legislative intent of the Public Assistance Law is clearly opposed to the proposition of pauperizing an innocent person, here the son, so that the State might recoup, we believe it to be our duty under the state of the record to pass upon the issues and declare the entire proceedings a nullity, including the default judgment.

The pleading filed by defendant might be considered a preliminary objection if the agreement of counsel provided it could be filed at such a late date, or it might be considered an answer to the complaint under these circumstances, but since counsel for plaintiff entered

a default judgment, it would appear the agreement of counsel did not so provide. The pleading as filed might be considered in answer raising an issue to plaintiff's rule for judgment against the garnishee under Pa. R. C. P. 1276, but this rule contemplates that such an answer be filed not by defendant, but by the garnishee; but perhaps the better choice would be to consider the pleading a petition to dissolve under Pa. R. C. P. 1291.

To commence an action by writ of fraudulent debtor's attachment, plaintiff is directed to file, by Pa. R. C. P. 1287, three papers with the prothonotary's office, namely, a praecipe for the writ, a complaint and a bond or security in the form of legal tender.

In this case no bond was filed. However, since plaintiff is the Commonwealth of Pennsylvania, perhaps the provision of the rule with respect to the filing of a bond does not apply by reason of the Act of July 7, 1919, P. L. 731, 12 PS §145, which gives the Commonwealth the right to prosecute all cases without being required to give any bond or security for costs or for any other purpose whatsoever.

It is noted that the provisions of this act of assembly are not suspended or affected by the Rules of Civil Procedure, and, therefore, the rule in effect prior to the effective date of the Rules of Civil Procedure still applies and this relieves the Commonwealth from filing a bond or giving security. See Commonwealth v. Gazella, 40 Lack. Jur. 159.

Now, taking up the defects set forth in defendant's petition, we first note the question of venue. Since there is no venue rule set forth in the fraudulent debtor's attachment rules, the conformity rules refer us to the rule under foreign attachment, which is Pa. R. C. P. 1254, and reads in part as follows:

"(A) An attachment against personal property of the defendant may be issued in and only in a county

in which (1) the property is located, or (2) a garnishee may be served."

The commentary set forth in 2 Goodrich-Amram Procedural Rules Service 58, §1254(1), reads as follows:

"Rule 1254 is largely a redeclaration of the prior practice in actions begun by foreign attachment. It has always been necessary to find either property of the defendant or a garnishee within the county. If there was neither a garnishee nor property of the defendant within reach of the court process, the attachment was a nullity. The form of writ prescribed by the Act of 1836 supported this result, for it presupposed the existence of property of the defendant or a garnishee within the jurisdiction of the court, and it was held that service could not be made *on a garnishee by deputization*. No case discussed the venue in foreign attachment proceedings against real property, but the local nature of such proceedings inevitably limited the venue to the county where that property was located."

In the case of Trau & Loevner, Inc., v. Routman, reported in 6 D. & C. 2d 164, on page 168 of the opinion it is stated:

"(a) The preliminary objections to the original writ:

"It is obvious that the original writ of attachment accomplished nothing. The attempted deputized service upon the Altmans in Washington County was invalid, for an attachment may not be served in another county by deputization. Jurisdiction to levy on debts by process of garnishment rests on the ability to serve the writ on the debtor of defendant within the jurisdiction of the court issuing the process: Falk Co. v. American Railway Express Co., 79 Pa. Superior Ct. 99; 10 Standard Pa. Practice, 272; Pa. R. C. P. 1257, 1006 and 1009."

As above stated, the praecipe for the writ in this case was filed in the prothonotary's office of this county with directions by counsel for plaintiff to have the property attached in Luzerne County and from the foregoing authorities, it seems clear that this was an improper procedure which justifies the court to dissolve the attachment.

The next objection to the attachment relates to the ownership of the property attached. Again, since there is no rule covering this subject under the fraudulent debtor's attachment rules, the conformity rule refers us to the foreign attachment rule, Pa. R. C. P. 1252, and provides in part as follows:

"A foreign attachment may be issued to attach property of a defendant not exempt from execution, upon any cause of action at law or in equity in which the relief sought includes a judgment or decree for the payment of money. . . ."

This rule, together with the conformity rule, under the rules relating to foreign attachment, refers us to the rules relating to the appropriate action at law, which in this case would refer to the Pennsylvania Rules of Civil Procedure governing venue in actions in assumpsit and, therefore, this rule has been interpreted to mean that only the property which would be subject to execution may be attached. Therefore, ownership must be sole and unconditional. If defendant does not have complete dominion of the property held by the garnishee or if the garnishee is holding the property for specific purposes, it is immune from attachment.

In 2 Goodrich-Amram Procedural Rules Service 33, §1252(10), there are cases cited for the following statement:

"Property held by a defendant in a different capacity from that under which he is sued is also immune to attachment."

58

In the case of Benedict & Eberle Company v. Hollman, 68 Pa. Superior Ct. 155, it is held that the right of an attachment creditor can rise no higher than that of his debtor. In other words, what the debtor cannot sue for and recover from the garnishee is beyond the grasp of an attaching creditor, and it would, therefore, seem to follow that joint funds for a special purpose such as we have present in this case would place the funds beyond the grasp of the Commonwealth.

The remaining matters set forth in defendant's petition are, we believe, relevant and material, but they speak for themselves and need little or no discussion.

The first is that defendant received no assistance after the funds, which were attached, were placed on deposit and, therefore, from the very record in the case, it is apparent that the allegations of the complaint are incorrect.

The second matter alleging that defendant concealed by fraud the property attached is, in our opinion, not in accordance with the facts, nor does it meet the requirement set forth in the rules governing fraudulent debtor's attachment proceedings.

Pa. R. C. P. 1287 (d) provides: "The complaint shall set forth the cause of action, the ground for the attachment, a general statement of the fraud on which the attachment is based, and if the plaintiff elects to file a bond or deposit legal tender based on the estimated value of the property, a statement of its value."

It is true that the above quoted rule requires only that the alleged fraud be averred in a general statement, but it is our opinion that there must be at least some indication of fraud set forth, and that the statement in the present complaint is much too general.

The only statement of the fraud contained in the complaint reads as follows:

"That the Defendant has with intent to defraud the Plaintiff has concealed or is about to conceal property."

We are of the opinion that this paragraph should have been continued by use of the words, "in that" and then proceeded with a statement of the facts relating to the manner in which the action was being committed to show the state of mind of defendant from which an intent might be inferred. In order to arrive at the proper pleading, we are referring by the conformity rules again to the rule governing actions in assumpsit which is Pa. R. C. P. 1019, and by that rule, the pleading must set forth all material facts in a concise and summary form.

A reading of the above quoted sixth paragraph of the complaint, in our opinion, fails to set forth all material facts because it is not only vague, but incomplete, and much too general to comply with the rules.

We are not unmindful of the fact that under the conformity rules a default judgment can be entered against defendant on a complaint and that the attachment might be dissolved and still permit the judgment on the complaint to stand, which results in the loss of the lien on the attached property, but gives plaintiff a practically worthless judgment.

This result was reached in the case of Century Insurance Agency v. Keller, 6 D. & C. 2d 792, wherein it is stated on page 793 of the opinion:

" '(Where an) attachment is dissolved by the court the suit still goes on; the plaintiff may recover his judgment against the defendant, but he has lost his grasp or lien on the particular property attached.' "

However, since we have found the complaint to be fatally defective because the undisputed facts appear that defendant was not the owner of the personal property at the time the assistance was granted and paid, the property is therefore not subject to repayment on this proceeding.

Fraudulent debtor's attachment proceedings are a very extraordinary type of proceedings which demand that the act of assembly authorizing its use and the Pennsylvania Rules of Civil Procedure governing the practice and procedure must be strictly construed and place a burden upon plaintiff wishing to use this proceeding to make certain that the right to use the same exists, and it is our opinion that in the event plaintiff chooses to proceed by this extraordinary method without making certain of the ground to proceed upon, and it develops that no such right existed, that plaintiff must then be subjected to the costs for instituting the proceedings improperly.

Fraudulent debtor's attachment may not be used for a fishing expedition and when counsel for plaintiff gives his directions to the sheriff, he should be certain that the sheriff has the right to make the service and attach the property. It is clear from the foregoing that the sheriff in this case had no such right either to make the service or to attach the property here involved because service in attachment proceedings may not be made by deputization nor may joint property be attached in a suit against one of the joint owners.

### Order

And now, to wit, March 13, 1958, it is accordingly ordered, adjudged and decreed:

1. That the order of court dated February 21, 1955, directing a counsel fee of $25 for counsel representing the garnishee to be paid out of the funds in the hands of the garnishee be and the same is hereby modified and amended to the end that said fee is taxed as a part of the record costs and be paid by the Commonwealth of Pennsylvania, plaintiff.

2. That the writ of fraudulent debtor's attachment which was issued January 3, 1955, be and the same is hereby dissolved.

3. That the default judgment entered by the prothonotary on March 17, 1955, against defendant in the amount of $7,520.80 be and the same is hereby stricken from the record.

4. That the rule to show cause why judgment should not be entered against the garnishee, dated April 11, 1955, be and the same is hereby dismissed.

5. That the costs of these proceedings including a fee of $25 due counsel for the garnishee be paid by the Commonwealth of Pennsylvania, Department of Public Assistance, plaintiff.

And now, to wit, March 13, 1958, upon motion of William S. Beckley, Esq., attorney for the Commonmealth of Pennsylvania, exception noted and bill sealed.